Amelia D. Haney, SBN 339524
Anali Cortez, SBN 307692
Estella M. Cisneros, SBN 287733
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
3747 E. Shields Ave.
Fresno, CA 93726
Telephone: (559) 441-8721
Facsimile: (559) 441-0724

*Attorneys for* Plaintiff Jose Antonio Aliaga Aguero

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO ALIAGA AGUERO,<br><br>        Plaintiff,<br><br>    v.<br><br>PHILLIP T. ESNOZ individually and dba Phillip Esnoz Farms; PHILLIP T. ESNOZ as trustee and beneficiary of the Esnoz, Joe S. & Sharron L. Trust and as successor in interest of Joe S. Esnoz, dba Joe Esnoz Farms and Joe S. Esnoz; WESTERN RANGE ASSOCIATION, a California non-profit mutual benefit corporation; and DOES 1 through 20 Inclusive,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF**<br><br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## <u>INTRODUCTION</u>

1.    Plaintiff, who is a former employee of Defendants, brings this action to recover unpaid wages, interest, penalties, and other damages based on Defendants' violations of Plaintiff's rights under federal and California law.

/ /

/ /

2.      Plaintiff alleges Defendants failed to pay him for work he performed as required by California and federal law. Plaintiff further alleges Defendants breached employment contracts, failed to pay Plaintiff all wages owed during employment, failed to provide necessary tools and equipment, and failed to provide accurate wage statements. Plaintiff further alleges Defendants failed to pay Plaintiff all wages owed at the time of discharge, failed to provide employment records, made false representations, assaulted Plaintiff, intentionally inflicted emotional distress on Plaintiff, and trafficked Plaintiff.

3.      Plaintiff complains Defendants' practices constitute unfair business practices under California's Unfair Competition Law, Bus. & Profs. Code sections 17200, *et seq*. (hereinafter "UCL"). Plaintiff further complains Defendants' violation of state labor laws are unlawful acts which have afforded Defendants an unfair competitive advantage. Pursuant to that statutory scheme, Plaintiff seeks restitution, injunctive remedies barring those practices, and reasonable attorneys' fees and costs pursuant to, *inter alia*, Cal. Labor Code sections 218.5, 226(e), 1194(a), and Cal. Code of Civ. Proc. section 1021.5.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. section 1331 because Plaintiff seeks damages for violation of his federal statutory rights under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. section 1589, *et. seq.*

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. section 1367(a) because these claims are so closely related to Plaintiff's federal law trafficking claim that they form parts of the same case or controversy under Article III of the United States Constitution. This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. section 2201.

/ /

6.      Venue is proper in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## INTRADISTRICT ASSIGMENT

7.      This case is properly assigned to the Fresno Division of this Court because a substantial part of this action arose in Kern County, California. L.R. 120(d).

## PLAINTIFF

8.      Plaintiff JOSE ANTONIO ALIGA AGUERO ("Mr. ALIAGA") is an individual who currently resides in Kings County and at all times relevant to this action resided in Kern County. Defendants employed Plaintiff for two periods of time: the first from July 2018 through July 2021 and the second from October 2021 to December 2021. Plaintiff worked for Defendants at various locations near Wasco and Lost Hills in Kern County, California.

## DEFENDANTS

9.      Defendant Western Range Association ("WESTERN RANGE") is a non-profit mutual benefit corporation registered in California on March 25, 1953 who at all times relevant to this action was conducting business in Kern County. The mailing address registered with California is 161 Fifth Avenue South, Suite 100, Twin Falls, Idaho 83301 and its agent for service of process is C T Corporation System with an agent address of 330 North Brand Boulevard, Suite 700, Glendale, California 91203.

10.     Defendant PHILLIP T. ESNOZ resides in Kern County and at all times relevant transacted business in California by employing sheepherders who, on information and belief, spent a substantial part of the year grazing sheep on land owned and operated by him and others near Wasco and Lost Hills. On information and belief, PHILLIP T. ESNOZ conducted business as PHILLIP ESNOZ

/ /

1  FARMS, a California business form unknown. At all times relevant, Defendant PHILLIP T. ESNOZ

2  was an employer as defined by Title 8 of the California Code of Regulations, section 11140.

3       11.    On information and belief, Defendant PHILLIP T. ESNOZ is a successor in interest of

4  Joe S. Esnoz, deceased September 28, 2021, dba Joe S. Esnoz and Joe Esnoz Farms, a California

5  business form unknown. Joe S. Esnoz and PHILLIP T. ESNOZ, along with WESTERN RANGE, jointly

6  employed Plaintiff from July 2018 through July 2021.

7       12.    On information and belief, Defendant PHILLIP T. ESNOZ is a successor trustee and

8  beneficiary of the Esnoz Joe S. & Sharron L. Trust, of which Joe S. Esnoz was the Settlor.

9       13.    Unless otherwise specified, "PHILLIP T. ESNOZ" means Defendant PHILLIP T.

10  ESNOZ in all of his capacities: individually; dba PHILLIP ESNOZ FARMS; as successor in interest of

11  Joe S. Esnoz, dba Joe S. Esnoz and Joe Esnoz Farms; and as successor trustee to the Esnoz Joe S. &

12  Sharron L. Trust.

13       14.    The true names and capacities, whether individual, corporate, associate, or otherwise, of

14  Defendants sued herein as DOES 1 through 20, inclusive (collectively referred to as "Defendants"), are

15  currently unknown to Plaintiff, who therefore sues DOES 1 through 20 by such fictitious names under

16  Code of Civil Procedure section 474.

17       15.    Plaintiff is informed and believes, and accordingly alleges, that each of the Defendants

18  designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to

19  herein. Plaintiff will seek leave of court, if required, to amend this Complaint to reflect the true names

20  and capacities of the Defendants designated from now on as DOES when such identities become known.

21  Whenever reference is made to any named party to this action including, but not limited to, references

22  to "Defendants," "PHILLIP T. ESNOZ," and "WESTERN RANGE," or other like terms, as well as

23  mentions to "Joe S. Esnoz," it shall include said "Does."

24  / /

16.     On information and belief, Plaintiff alleges that all times relevant to this action, each of the Defendants and DOES 1 through 20 was the agent or employee of every other Defendant and/or responsible as a beneficiary, trustee, or successor trustee of the Esnoz Joe S. & Sharron L. Trust and/or a successor in interest of Joe S. Esnoz, dba Joe Esnoz Farms and Joe S. Esnoz. All acts alleged to have been committed by any Defendant were committed on behalf of every other Defendant. At all times relevant to this action, each alleged act was committed by Defendants, and/or agents, servants, or employees of Defendants, and Defendants directed, authorized or ratified each such act. On information and belief, and at all times relevant to this action, each Defendant aided and abetted every other Defendant in the commission of acts alleged herein. Plaintiff is informed and believes and therefore alleges that each Defendant is responsible in some manner for the occurrences alleged herein and that the damages alleged herein were proximately caused by their conduct.

## FACTUAL ALLEGATIONS

17.     Defendant WESTERN RANGE, in a joint venture with Joe S. Esnoz and Defendant PHILLIP T. ESNOZ, submitted multiple job orders to the California Employment Development Department for clearance and approval in conjunction with their H-2A applications for the periods between July 2018 and July 2021 and October 2021 and December 2021.

18.     On information and belief, in a joint venture with Joe S. Esnoz and Defendant PHILLIP T. ESNOZ, Defendant WESTERN RANGE submitted the aforementioned job orders to recruit and import foreign workers, like Plaintiff, to herd sheep in Kern County, California. To import workers in this manner, employers must agree to comply with all H-2A program regulations and applicable federal and state laws. 20 C.F.R. § 655.135(e).

19.     On information and belief, Defendant WESTERN RANGE facilitated the H-2A labor certification process and Mr. ALIAGA's H-2A visa applications in order to provide Mr. ALIAGA to perform labor for Joe S. Esnoz and Defendant PHILLIP T. ESNOZ from July 2018 until July 2021, and

1    again from October 2021 until December 2021, under the terms of a written employment contract

2    prepared and provided by WESTERN RANGE.

3         20.    On information and belief, WESTERN RANGE was at all times relevant Mr. ALIAGA's

4    joint employer and party to Plaintiff's employment contract with Defendants, or in the absence of a

5    separate agreement, the employment contract created under the federal regulations. 20 C.F.R. §

6    655.122(q).

7    **July 2018 – July 2021**

8         21.    Defendants WESTERN RANGE and PHILLIP T. ESNOZ, and on information and

9    belief, Joe S. Esnoz, submitted job order number 15584453 to the California Department of

10   Employment Development, certified as Temporary Alien Labor Certification number H-300-17272-

11   791634, requesting one worker for a period including July 2018 to December 6, 2018 to work in Kern

12   County herding sheep at locations owned and/or operated by Joe S. Esnoz and Defendant PHILLIP T.

13   ESNOZ. A copy of this job order is attached as "Exhibit A" to the complaint. Mr. ALIAGA was hired

14   to perform labor under this job order and related documentation. On information and belief, the

15   aforementioned Temporary Alien Labor Certification was extended and/or additional labor

16   certifications were granted, allowing Plaintiff to continue working under an H-2A visa until July 2021.

17        22.    On information and belief, Mr. ALIAGA was recruited to work for Defendants and Joe

18   S. Esnoz by Elias R. Huaynate ("Mr. Huaynate"), a long-term employee and recruiter for Joe S. Esnoz.

19   After Mr. ALIAGA inquired about employment opportunities in the United States, Mr. Huaynate agreed

20   to connect Mr. ALIAGA with Joe S. Esnoz on the condition that Mr. ALIAGA pay Mr. Huaynate a

21   $2,200.00 recruitment fee. Mr. Huaynate told Mr. ALIAGA that he would be expected to pay the

22   $2,200.00 fee after starting work for Joe S. Esnoz. With no other options to seek work in the United

23   States to support his family, Mr. ALIAGA agreed.

24   / /

23.     On information and belief, Mr. Huaynate then provided Mr. ALIAGA's phone number to Joe S. Esnoz. Joe S. Esnoz called Mr. ALIAGA and conducted a phone interview while Mr. ALIAGA was in Junín, Peru. At the end of the interview, Joe S. Esnoz agreed to hire Mr. ALIAGA and informed him that WESTERN RANGE would assist with the visa application process.

24.     Mr. ALIAGA subsequently communicated with WESTERN RANGE and made three (3) trips to Lima, Peru, paying out of pocket for transportation and meals, to complete the hiring and visa application process. During one of these trips, Mr. ALIAGA paid a fee, having been told it was for the cost of the H-2A visa, by depositing money into a bank account at the instruction of WESTERN RANGE's employees in Lima. Mr. ALIAGA also paid for transportation from Junín to Lima and for his meals while traveling to the United States to begin work in July 2018.

25.     Under the aforementioned job order and, on information and belief, a contract provided by WESTERN RANGE, Defendants and Joe S. Esnoz contractually promised semi-monthly compensation, sanitary and safe housing, as well as sufficient water and food. Defendants promised to provide worker's compensation for work-related injuries, a means of communication, and necessary tools and equipment.

26.     Defendants and Joe S. Esnoz offered, and Plaintiff accepted, employment based on these promises. Plaintiff worked for Defendants from July 2018 until July 2021 under these terms.

27.     Under the terms of the job order and certification and by operation of law, Defendants and Joe S. Esnoz were required to reimburse Mr. ALIAGA for the visa fee, travel expenses related to obtaining the visa, and travel expenses between Junín and the United States. Defendants and Joe S. Esnoz failed to reimburse Mr. ALIAGA for the visa costs and did not reimburse any travel expenses. Mr. ALIAGA is owed approximately $400.00 for these expenses.

28.     Upon beginning work for Defendants and Joe S. Esnoz in July 2018 and continuing for the first approximately three months of his employment, Mr. ALIAGA paid a substantial portion of his

earnings to Mr. Huaynate until he had paid the $2,200.00 fee. In approximately the third or fourth month of Mr. ALIAGA's employment, Joe S. Esnoz indicated his knowledge of Mr. Huaynate's practices by asking Mr. ALIAGA how much Mr. Huaynate had charged him.

29. The payments to Mr. Huaynate left Mr. ALIAGA with very little money to purchase necessities, including food, or to send home to support his family. By the time Mr. ALIAGA had paid the $2,200.00 to Mr. Huaynate, he was desperate for money for basic necessities, and with no means of returning to Peru, he had little choice but to continue working for Defendants and Joe S. Esnoz.

30. Under the terms of the job order and federal regulations, Defendants were required to pay Mr. ALIAGA the higher of the Adverse Effect Wage Rate (AEWR), the agreed-upon collective bargaining wage, or the applicable state or federal minimum wage. 20 C.F.R. §§ 655.211(a) and 655.210(g).

31. California state law provides for a monthly minimum wage for sheepherders, based on the standard schedule of being "on call" 24-hours per day, seven days per week. On information and belief, Joe S. Esnoz and Defendant PHILLIP T. ESNOZ employed fewer than twenty-five (25) employees. For employers with twenty-five (25) or fewer employees, the monthly minimum wage for sheepherders in 2018 was $1,866.88; in 2019, $1,955.74; in 2020, $2,133.52; and in 2021, $2,311.24. Industrial Welfare Commission ("IWC") Wage Order 14-2001 § 4(E), 8 Cal. Code of Regs. § 11140.

32. In July 2020, Defendants deducted $1,461.00 from Mr. ALIAGA's paychecks, leaving him with a net pay of $739.18 for the month, less than the monthly minimum wage for sheepherders. Defendants told Mr. ALIAGA these deductions were for federal income taxes but did not provide tax information or required tax forms to Mr. ALIAGA. Plaintiff did not knowingly authorize any deductions from his wages. On information and belief, Defendants made similar deductions in 2019 and 2021 and, except for a line item labeled "CA – Employee Disability," did not otherwise make any other legally

/ /

required deductions during Mr. ALIAGA's employment. Mr. ALIAGA is owed over approximately $4,300.00 in minimum wages.

33.     California law requires overtime premium wages for sheepherders employed on a 24-hour per day, seven-day per week "on call" basis. On the seventh day of work in a workweek, sheepherders are entitled to one and a half times the regular rate for the first eight (8) hours and twice the regular rate for the next sixteen (16) hours worked. Beginning January 1, 2019, the required overtime for employers with twenty-five (25) or fewer employees was $233.32; in 2020, $254.11; and in 2021, $274.91. Cal. Lab. Code §§ 510, 860 and 862.

34.     Mr. ALIAGA was employed "on call" 24 hours per day, seven days per week. Defendants failed to pay Mr. ALIAGA overtime during July, August, September, October, and November 2020. On information and belief, Defendants failed to pay overtime premiums in 2019, the remaining months of 2020, and 2021. Mr. ALIAGA is owed more than approximately $7,400.00 in overtime wages.

35.     Defendants and Joe S. Esnoz were required to pay Mr. ALIAGA his wages at least once every two weeks. 20 C.F.R. § 655.210(h). Defendants failed to timely pay Plaintiff. Joe S. Esnoz and Defendant PHILLIP T. ESNOZ delivered paychecks approximately every six to eight weeks. Mr. ALIAGA typically cashed his checks within a few days, either getting a ride from a friend or riding his bicycle into Lost Hills.

36.     Defendants were required to provide wage statements according to Labor Code section 226. Defendants were required to indicate whether the site of the employee's work was on or off the range. 20 C.F.R. § 655.210(f). On information and belief, Defendants failed to indicate whether Plaintiff worked on or off the range and failed to provide accurate wage statements as required by the Labor Code and federal regulations.

/ /

37.     At all times relevant, Defendants failed to provide Mr. ALIAGA sufficient potable water as required by the regulations and the job orders mentioned above. 20 C.F.R. § 655.235(b). Defendants provided Mr. ALIAGA with approximately ten (10) to fifteen (15) gallons of drinking water every week. Both Joe S. Esnoz and PHILLIP T. ESNOZ delivered water to Mr. Aliaga, with PHILLIP T. ESNOZ also transporting the water tank between housing sites as the sheep were relocated. Defendants failed to provide an additional clean water source for laundry and bathing. Mr. ALIAGA rationed his potable water for drinking. He resorted to using the unfiltered water provided for the sheep to cook, bathe, and wash his clothes, resulting in stomach aches and skin irritation.

38.     Defendants were required to provide, free of charge, sufficient food that would provide a daily source of protein, vitamins, and minerals. 20 C.F.R. §§ 655.122(g) and 655.210(e). Defendants failed to provide Mr. ALIAGA with enough food to prepare his meals. On information and belief, Defendant PHILLIP T. ESNOZ typically delivered food to Mr. ALIAGA. Mr. ALIAGA repeatedly requested additional provisions from Defendants, but they continued to provide insufficient amounts and frequently delayed deliveries. Consequently, Mr. ALIAGA suffered from hunger and poor nutrition. Additionally, Mr. ALIAGA incurred expenses of over $1,400.00 by having to purchase much of his own food. Defendants did not take Mr. ALIAGA into town for any reason, and Mr. ALIAGA relied on rides from friends or riding his bicycle to purchase food. Under the contract, Mr. ALIAGA was promised meals with an approximate value of over $13,800.00, but he received less than half that, resulting in damages of approximately over $6,900.00.

39.     Defendants were required to provide range housing that was structurally sound, in good repair, and weather tight. Housing must have a comfortable and clean bed; adequate heating; and mechanical refrigeration, or an alternative means of preserving food and preventing spoilage. 20 C.F.R. § 655.235. Defendants failed to provide Plaintiff with adequate housing as required by the job orders and by operation of law.

40.     Defendants housed Plaintiff in an old, filthy camping trailer that had a broken window which was poorly repaired, covered loosely with a sheet of plywood. The trailer's door did not have a lock and did not fully close, opening with any slight breeze. The trailer was not insulated and did not protect from extreme heat or cold. Mr. ALIAGA's bed was made of dirty, torn cushions. The trailer was infested with cockroaches and other vermin, and Defendants did not provide a means of pest control. Defendants, and on information and belief, primarily Defendant PHILLIP T. ESNOZ towed the trailer between housing sites depending on where the sheep were grazing but Defendants did not maintain or repair the trailer to withstand travel over dirt roads and rough terrain, further deteriorating Mr. ALIAGA's housing with each move. Defendants provided housing of a substantially diminished value compared to that promised under the contract, entitling Plaintiff to approximately over $14,000.00 in damages.

41.     Defendants failed to provide an adequate means of preserving food. The propane refrigerator in Plaintiff's trailer was broken and leaked fuel, never getting cold enough to prevent spoilage. Plaintiff's only means of cooking was a propane stove. When he used the refrigerator to try to preserve his food, he frequently ran out of propane to cook. Defendants delivered propane approximately once every twenty (20) days. Mr. ALIAGA repeatedly informed Defendants of the leak, but it was never repaired. Defendants typically responded by accusing Plaintiff of wasting fuel and only rarely provided fuel outside of the standard delivery.

42.     Under the federal regulations, Defendants were required to provide, without cost, a means of communication and tools and equipment necessary for the safe and effective performance of Mr. ALIAGA's job. 20 C.F.R. § 655.210(d). In addition, Defendants were required to reimburse Plaintiff for business expenditures. Cal. Lab. Code § 2802.

43.     Defendants did not provide Mr. ALIAGA any tools or equipment necessary for his work, including sheep dogs. Defendants also did not provide any means of transportation, such as a horse or

bicycle, leaving Mr. ALIAGA to walk many miles every day. Mr. ALIAGA eventually bought a dog and a bicycle in order to safely and effectively discharge his duties. Defendants failed to reimburse Mr. ALIAGA for these expenses, which totaled approximately $70.00.

44.    Defendants did not provide a means of communication. After several requests from Mr. ALIAGA, Joe S. Esnoz purchased a cell phone for him but charged him the cost. Mr. ALIAGA paid Joe S. Esnoz for the phone and separately paid for a monthly service plan. Defendants failed to reimburse Mr. ALIAGA for these expenses, which totaled over $1,700.00.

45.    On information and belief, Joe S. Esnoz repeatedly threatened to deport Mr. ALIAGA during this period if he saw Mr. ALIAGA resting or believed that Mr. ALIAGA was not working hard enough, despite Mr. ALIAGA performing his duties. Additionally, Joe S. Esnoz and PHILLIP T. ESNOZ became angry with Mr. ALIAGA when he requested additional food, water, or propane. Joe S. Esnoz and PHILLIP T. ESNOZ repeatedly shouted at Mr. ALIAGA and accused him of wasting supplies. Joe S. Esnoz's threats of deportation combined with his and Defendant PHILLIP T. ESNOZ's reactions to Mr. ALIAGA's requests made Mr. ALIAGA feel that he had to be constantly working and silently accept the poor conditions for fear of being deported.

46.    Defendants' several failures to comply with legal standards lowered Defendants' labor costs and provided Defendants a significant competitive advantage in violation of the Unfair Competition Law. Defendants' lack of fair compensation to Plaintiff for the monthly minimum wage for all time worked, required overtime, and failure to provide adequate food, water, and housing gives Defendants' businesses a significant advantage over companies that fairly compensate their employees and respect the laws.

47.    Upon Mr. ALIAGA's separation from his employment with Joe S. Esnoz and Defendants on July 2, 2021, Joe S. Esnoz and Defendants failed to pay him all owed wages, including all

/ /

compensable regular wages and overtime premium pay, in a prompt and timely manner in violation of the California Labor Code.

**October 2021 – December 2021**

48.     Defendant WESTERN RANGE, and on information and belief, Joe S. Esnoz and Defendant PHILLIP T. ESNOZ, submitted a job order, certified as Temporary Alien Labor Certification Number H-300-21196-465157, to the California Employment Development Department requesting one worker for the period of October 1, 2021 until December 31, 2021 to herd sheep in Kern County at locations owned and/or operated by Joe S. Esnoz and PHILLIP T. ESNOZ.

49.     On information and belief, in September 2021, while still in Peru, Mr. ALIAGA signed a contract prepared and provided by WESTERN RANGE specifying he would again work for Joe S. Esnoz. Defendants offered, and Mr. ALIAGA accepted, employment under the terms of this contract and assurances made pursuant to H-2A Labor Certification Number H-300-21196-465157.

50.     Mr. ALIAGA worked for Defendants from October to December 2021 under the terms of this labor certification. Copies of this H-2A labor certification and this employment contract are attached as "Exhibit B" and "Exhibit C," respectively, to this complaint.

51.     In order to apply for the visa and sign the employment contract, Mr. ALIAGA again made multiple trips between his hometown and Lima and again deposited the purported visa fee in a bank account designated by a WESTERN RANGE employee. Plaintiff again paid travel expenses including meals. Defendants did not reimburse Plaintiff for any of these expenses, which totaled approximately $300.00.

52.     The aforementioned Temporary Alien Labor Certification also identified Joe S. Esnoz as an employer and was approved on July 20, 2021, prior to Joe S. Esnoz's death on September 28, 2021.

53.     Mr. ALIAGA was scheduled to leave Peru on October 19, 2021. Approximately two weeks before Mr. ALIAGA left Peru, Defendant PHILLIP T. ESNOZ called to inform him Joe S. Esnoz

had died. Defendant PHILLIP T. ESNOZ told Mr. ALIAGA he would pick him up in Bakersfield, California and that his employment was guaranteed.

54.     PHILLIP T. ESNOZ picked Plaintiff up in Bakersfield, California on October 19, 2021 and Plaintiff began working on October 20, 2021.

55.     The above-mentioned job order and signed employment contract promised a monthly wage of $2,311.24, paid semi-monthly. Under the aforementioned labor certification, Defendants promised to comply with all other applicable federal and state laws.

56.     On information and belief, during the period of October to December 2021, Defendants failed to pay overtime premium wages, totaling approximately $400.00, failed to pay wages at least semi-monthly, and failed to provide accurate paystubs as required under California law and federal regulations.

57.     During the period of October to December 2021, Mr. ALIAGA resided in the same dilapidated, unsanitary, pest-infested, and structurally inadequate camper trailer that he had previously occupied. The camper trailer did not have adequate heating; a clean, comfortable bed; a means of pest control; or adequate means for preserving food and preventing spoilage, as the propane refrigerator in the camper had not been repaired and continued to leak fuel. Defendants provided housing of a substantially diminished value compared to that promised under the contract, entitling Plaintiff to approximately over $750.00 in damages.

58.     Under the terms of the aforementioned contract and labor certification, Defendants promised to provide adequate potable water and nutritionally sufficient food.

59.     On information and belief, Defendants continued to supply Mr. ALIAGA with only ten (10) to fifteen (15) gallons of potable water per week, failed to provide additional water for bathing and laundry, and failed to provide food sufficient in amount and nutritional worth. Under the terms of the

/ /

1    job order and contract, Plaintiff was promised meals worth approximately $605.00, but received less

2    than half that, entitling him to damages of approximately over $300.00.

3         60.    Under the contract, Defendants promised to provide all necessary tools and equipment,

4    including sheep dogs, as well as a no-cost means of communication. However, Defendants failed to

5    provide any tools or equipment necessary for Mr. ALIAGA to perform his work safely and effectively.

6    Defendants did not provide Plaintiff with a means of communication or reimburse Plaintiff's monthly

7    phone service plan, which cost Plaintiff approximately $70.00 during this period.

8         61.    When Mr. ALIAGA returned to work on October 20, 2021, for approximately three

9    weeks, he was primarily occupied with lambing, though he simultaneously had to herd approximately

10   600 adult sheep. Working alone, Mr. ALIAGA typically started work between 3:30 am and 5:00 am and

11   worked continuously until 8:00 pm or 9:00 pm, while also getting up repeatedly throughout the night to

12   tend to the sheep.

13   62.    On information and belief, Defendant PHILLIP T. ESNOZ spent several hours at Mr. ALIAGA's

14   worksite about four or five days per week during the lambing. PHILLIP T. ESNOZ occasionally assisted

15   with lambing and docking, but primarily observed Mr. ALIAGA as he worked.

16        63.    While at Mr. ALIAGA's worksite, PHILLIP T. ESNOZ interrogated Mr. ALIAGA about

17   any person who came near the worksite, including passersby on the public roadway with whom Mr.

18   ALIAGA had no interaction. PHILLIP T. ESNOZ repeatedly told Mr. ALIAGA he was not there to talk

19   to people; he was there to work.

20        64.    Defendant PHILLIP T. ESNOZ frequently hit, kicked, and mistreated sheep and lambs

21   in front of Mr. ALIAGA, often at the same time yelling at Mr. ALIAGA about his work.

22        65.    In approximately mid-November 2021, around the end of the lambing season, PHILLIP

23   T. ESNOZ shot and killed two lambs who crawled under an electric fence. Mr. ALIAGA knew PHILLIP

24   T. ESNOZ always had a rifle in his truck, however, when PHILLIP T. ESNOZ shot his rifle, Mr.

ALIAGA had his back turned to Defendant PHILLIP T. ESNOZ. Thus, Mr. ALIAGA was scared when he heard the two gunshots behind him and saw the two lambs lying dead about 300 feet away from him. This incident made Mr. ALIAGA feel afraid and unsafe at work.

66.     On information and belief, PHILLIP T. ESNOZ went to Mr. ALIAGA's worksite less frequently after the lambing season but began surveilling Mr. ALIAGA from a distance almost daily.

67.     Starting in November 2021, Defendant PHILLIP T. ESNOZ began a pattern of repeatedly driving by Mr. ALIAGA's worksite in the mornings, then in the afternoons, parking approximately a quarter to half a mile away from Mr. ALIAGA's worksite facing Mr. ALIAGA's trailer. Defendant PHILLIP T. ESNOZ stayed and watched Mr. ALIAGA for hours at a time, often returning multiple times during the afternoon and staying until dark, observing Mr. ALIAGA from a distance. This pattern continued almost daily into December 2021. Mr. ALIAGA felt intimidated, unsure why Defendant PHILLIP T. ESNOZ was watching him so frequently, but afraid to stop working or speak to anyone.

68.     Defendant PHILLIP T. ESNOZ's constant surveillance made Mr. ALIAGA afraid to stop working at all, even to sit down or eat, because he feared how PHILLIP T. ESNOZ would respond given Defendant's violent behavior toward the sheep and the rifle he kept in his truck.

69.     Plaintiff was too afraid to leave the worksite or ask his friends for a ride into town. Consequently, he was unable to go into town to cash his checks, send money to his family in Peru, or buy additional food to supplement Defendants' inadequate provisions. Mr. ALIAGA started to have trouble sleeping and felt anxious, depressed, trapped, and isolated.

70.     In approximately the last week of November 2021, Defendant PHILLIP T. ESNOZ nearly ran Mr. ALIAGA over with his truck. Mr. ALIAGA was alone tending more than 800 sheep and setting up an electric fence while Defendant PHILLIP T. ESNOZ was parked nearby, surveilling. A section of the fence fell, and several lambs escaped into an adjacent field. Mr. ALIAGA ran to fix the fence and gather the sheep. As Mr. ALIAGA chased the lambs back into the proper pasture, PHILLIP T. ESNOZ

sped into the field and started chasing the lambs in his truck. Defendant drove his truck very fast and erratically toward Mr. ALIAGA, swerving after the lambs. Defendant came within approximately five feet of Mr. ALIAGA. Mr. ALIAGA believes Defendant would have run him over had he not jumped out of the way.

67. Defendant then stopped the vehicle and jumped out, screaming and cursing at Mr. ALIAGA. Defendant frightened Mr. ALIAGA by threatening to "step" on him and saying "we'll see" what happens with you. Based on Defendant's enraged tone, Mr. ALIAGA felt like this was a threat of physical violence and it terrified him.

71. Fearing for his life, Plaintiff fled his employment with Defendants on December 4, 2021. He left at night, believing Defendant PHILLIP T. ESNOZ would not be surveilling him to stop or hurt him.

72. Though Mr. ALIAGA escaped his employment with Defendants, Defendant PHILLIP T. ESNOZ's behavior left lasting effects in Mr. ALIAGA's life. Since leaving Defendants' employment, Mr. ALIAGA has trouble connecting with new people and no longer enjoys socializing. Mr. ALIAGA experiences difficulty sleeping, nightmares, flashbacks, and anxiety attacks. Mr. ALIAGA fears that if he leaves the house or visits a new place, he might run into PHILLIP T. ESNOZ.

73. On July 15, 2022, Plaintiff, through his attorney, requested employment records from Defendants WESTERN RANGE and PHILLIP T. ESNOZ pursuant to Labor Code sections 226, 1198.5, and 20 C.F.R. section 655.122. Defendants failed to provide wage information and payroll records, complete personnel records, a copy of their injury and illness prevention plan, and copies of all documents signed by Plaintiff.

/ /

/ /

/ /

1

2

3

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT FOR THE PERIOD OF JULY 2018 TO JULY 2021**
**Civil Code § 3300**
*Plaintiff Against All Defendants*

4   74.   Plaintiff re-alleges and incorporates by reference each preceding paragraph of the

5   complaint as fully set forth herein and further alleges that:

6   75.   Plaintiff performed his contractual obligation by performing work for Defendants from

7   approximately July 18, 2018 until July 2, 2021.

8   76.   On information and belief, Plaintiff was contractually promised the California monthly

9   minimum wage for sheepherders, which was $1,866.88 per month in 2018; $1,955.74 per month in 2019;

10   $2,133.52 per month in 2020; and $2,311.24 per month in 2021. IWC Wage Order 14-2001 § 4(E), 8

11   Cal. Code of Regs. § 11140. Defendants further promised to comply with all applicable state and federal

12   laws and regulations, including requirements for overtime compensation. 20 C.F.R. § 655.135(e).

13   77.   On information and belief, Defendants promised to pay for or reimburse Plaintiff's visa

14   and travel expenses, including a subsistence stipend for travel between Peru and the United States. 20

15   C.F.R. § 655.122(h).

16   78.   Under the job order, Defendants and Joe S. Esnoz promised that neither they as employers

17   nor their agents had sought or received payment of any kind from Mr. ALIAGA for any activity related

18   to obtaining H-2A labor certification, including recruitment costs. 20 C.F.R. § 655.135(j).

19   79.   On information and belief, Defendants promised to provide, free of charge, either three

20   prepared meals per day or adequate food for Plaintiff to prepare his own meals; adequate means of

21   preserving food and preventing spoilage; and a minimum of 4.5 gallons of potable water per day and

22   additional clean water for laundry and bathing. 20 C.F.R. § 655.210(e); 20 C.F.R. §§ 655.235(b) and (h).

23   / /

24   / /

80.     On information and belief, Defendants promised to provide structurally sound and sanitary housing that sheltered occupants against the elements; an adequate means of heating; and pest-control materials to combat insects, rodents, and other vermin. 20 C.F.R. § 655.235.

81.     On information and belief, Defendants promised to provide, without cost to Plaintiff, all tools and equipment necessary to perform the duties assigned in the contract as well as a means of communication. 20 C.F.R. § 655.210(d).

82.     Defendants breached the employment contract by making illegal deductions from Plaintiff's paychecks leaving Plaintiff with less than the California monthly minimum wage for sheepherders.

83.     Defendants breached the employment contract by failing to reimburse Plaintiff for visa fees and travel expenses.

84.     Defendants breached the employment contract by failing to prevent or remedy Mr. Huaynate's collection of the $2,200.00 recruitment fee.

85.     Defendants breached the employment contract by providing insufficient food for Plaintiff to prepare adequate meals as well as by failing to provide adequate means of preserving food, which allowed food to spoil quickly and have either reduced or no value.

86.     Defendants breached the employment contract by failing to provide sufficient potable water or additional clean water for Plaintiff's exclusive use, resulting in stomach issues and skin irritation.

87.     Defendants breached the employment contract by providing structurally unsound, unsanitary housing that lacked heating and pest control and had either reduced or no value.

88.     Defendants breached the employment contract by failing to provide necessary tools and equipment. Defendants further breached the employment contract by charging Plaintiff for a cellphone

/ /

and failing to reimburse for the cost of phone service, while also failing to provide another, no-cost means of communication.

89.     As a direct and proximate result of Defendants' breach of contract, Plaintiff suffered injury, including but not limited to unlawful deductions, economic loss and travel expenses, illness and other damages related thereto.

90.     Plaintiff is entitled to and requests restitution and damages arising out of Defendants' breach of contract in amounts to be determined at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT FOR THE PERIOD OF**
**OCTOBER 2021 TO DECEMBER 2021**
**Civil Code § 3300**
*Plaintiff Against All Defendants*

91.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

92.     Plaintiff performed his contractual obligation by performing work for Defendants from October 2021 to December 2021.

93.     On information and belief, Plaintiff was contractually promised $2,311.24 per month, paid semi-monthly. 20 C.F.R. 655.210(h). Defendants further promised to comply with all applicable state and federal laws and regulations, including payment of overtime compensation. 20 C.F.R. § 655.135(e).

94.     On information and belief, Defendants breached the employment contract by failing to compensate Plaintiff for overtime hours worked and failing to pay wages on a semi-monthly basis.

95.     At all relevant times herein, Defendants contractually promised, as required under the federal regulations, to provide Plaintiff without charge (1) either three sufficient meals a day or adequate provisions of food to enable Plaintiff to prepare his own meals and (2) adequate potable water, or water that can be easily rendered potable and the means to do so. 20 C.F.R. § 655.210(e).

96.     Defendants breached the employment contract by failing to provide adequate provisions of food to enable Plaintiff to prepare his own meals between October 2021 to December 2021 and breached the contract by failing to provide adequate potable water which resulted in stomach issues and skin irritation.

97.     Under the terms of the labor certification and written contract, Defendants promised to offer Plaintiff employment for at least three-fourths of the hours offered in the contract, beginning on Plaintiff's first day of work. 20 C.F.R. § 655.122(i). Plaintiff's first day of work was October 20, 2021 and the contract ended on December 31, 2021. Based on Plaintiff's fixed schedule of working 24 hours per day, 7 days per week, the contract offered 1,752 hours, with Defendants guaranteeing that Plaintiff be offered at least three-fourths, or 1,314 hours. Defendants breached the employment contract by constructively discharging Plaintiff, thereby failing to offer at least three-fourths of the promised hours.

98.     To establish a constructive discharge under California law, Plaintiff must prove that: (1) his working conditions at the time of his resignation were so intolerable or aggravated that (2) a reasonable person in Plaintiff's position would have been compelled to resign, and that (3) Defendants either intentionally created or knowingly permitted the intolerable working conditions. *King v. AC & R Advert.*, 65 F.3d 764, 767 (9th Cir. 1995), *citing Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (Cal. 1994).

99.     Defendants constructively discharged Plaintiff by intentionally creating or knowingly permitting Plaintiff's working condition to be so intolerable or aggravated that a reasonable person would have been compelled to resign.

100.     Having been constructively discharged, Plaintiff worked through December 4, 2021, only 1,104 hours. Defendants breached the contract by failing to offer at least 1,314 hours and Plaintiff is entitled to compensation for the difference.

/ /

101.    As a direct and proximate result of Defendants' breach of contract, Plaintiff suffered injury, including but not limited to wage theft, economic loss, illness, and other damage related thereto.

102.    Defendants breached the duty of good faith and fair dealing. Defendants unfairly prevented Plaintiff from receiving benefits entitled under the contract and harmed the Plaintiff physically and emotionally with their conduct.

103.    Plaintiff is entitled to and requests restitution and damages arising out of Defendants' breach of contract in amounts to be determined at trial.

**THIRD CAUSE OF ACTION**
**FAILURE TO PAY MINIMUM WAGES**
**California Labor Code §§ 1194, 1197, and 218.6;**
**8 Cal. Code of Regs. §§ 11140 et seq., IWC Wage Order 14**
*Plaintiff Against All Defendants*

104.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein, and further alleges as follows:

105.    At all times relevant, Defendants failed to pay Plaintiff the minimum wage for each hour worked in violation of Labor Code section 1197, California Industrial Welfare Commission Wage Order No. 14-2001 (hereinafter Wage Order 14), and 8 Cal. Code of Regulations (C.C.R.) section 11140.

106.    The monthly minimum wage for sheepherders for employers with 25 or fewer employees was $1,866.88 per month effective January 1, 2018; $1,955.74 per month, effective January 1, 2019; $2,133.52 per month effective January 1, 2020; and $2,311.24 per month effective January 1, 2021. 8 C.C.R. § 11140(4)(E)(2).

107.    In July 2020 and, on information and belief, in July 2019 and July 2021, Defendants failed to pay Plaintiff the monthly minimum wage for sheepherders by making unlawful deductions to Plaintiff's wages.

108.    Pursuant to Labor Code sections 1194 and 218.6, Plaintiff is entitled to recover the unpaid balance of the full amount of the minimum wages and interest thereon in an amount to be proven at trial.

109.     As a result of Defendants' unlawful acts, Plaintiff has been deprived of minimum wages in amounts to be determined at trial, and is entitled to recover such amounts, plus interest thereon under Labor Code section 218.6 and attorneys' fees and costs under Labor Code section 1194.

110.     Plaintiffs are also entitled to recover liquidated damages in an amount equal to the minimum wages unlawfully unpaid and interest thereon pursuant to Labor Code section 1194.2. The exact amount of liquidated damages owed will be determined at trial.

**FOURTH CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME WAGES**
**California Labor Code §§ 510, 1194, 218, 218.6, 860, 861, 862;**
*Plaintiff Against All Defendants*

111.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein, and further alleges as follows:

112.     At all times relevant, Defendants failed to pay Plaintiff overtime wages in the amount of one and a half times the regular rate for the first eight (8) hours worked on the seventh day in a workweek and two times the regular rate for each hour over eight (8) on the seventh day of work, as required by Labor Code sections 510 and 1198. *See* Lab. Code § 862, applying Lab. Code section 510 commencing January 1, 2019.

113.     At all times relevant, Plaintiff was employed on an "on call" basis twenty-four hours a day, seven days per week. Therefore, he was entitled to overtime wages in the amount of one and a half times the regular rate for the first eight (8) hours worked on the seventh day of work in a workweek. Plaintiff was further entitled to overtime wages in the amount of twice the regular rate for sixteen (16) hours worked in excess of eight (8) hours on the seventh day of work.

114.     As a result of Defendants' failure to pay Plaintiff overtime wages in accordance with state law, Plaintiff was deprived of wages due to him in amounts to be proven at trial and is entitled to interest pursuant to Labor Code section 218.6 and attorneys' fees and costs under Labor Code section 218.5.

1

2

3

### FIFTH CAUSE OF ACTION
### FAILURE TO INDEMNIFY EMPLOYEE EXPENDITURES
**California Labor Code § 2802**
*Plaintiff Against All Defendants*

4    115.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of the

5    complaint as if fully alleged herein, and further alleges as follows:

6    116.    At all times relevant, Defendants were required to indemnify Plaintiff for "all necessary

7    expenditures or losses incurred. . . in direct consequence of the discharge of his. . . duties." Lab. Code §

8    2802.

9    117.    Plaintiff incurred expenses directly consequential to his employment by paying for fees

10   and travel expenses to obtain his H-2A visas; paying for travel expenses from Junín, Peru to the United

11   States; and purchasing tools and equipment necessary to the performance of his job, including but not

12   limited to a dog, bicycle, cell phone, and a service plan for the cell phone. Defendants did not reimburse

13   Plaintiff for these expenditures in violation of Labor Code section 2802(a).

14   118.    As a result of Defendants' unlawful acts, Plaintiff had to purchase equipment necessary

15   for the performance of his job and was not reimbursed for these costs, which constituted an unlawful

16   offset against the minimum wages due to Plaintiff. As a direct and proximate result, Plaintiff suffered

17   losses in amounts to be determined at trial and is entitled to recover such losses plus interest and

18   attorneys' fees and costs pursuant to Labor Code section 2802.

19

20

21

### SIXTH CAUSE OF ACTION
### FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS
**California Labor Code § 226;**
**8 Cal. Code of Regs. §§ 11140 et seq., IWC Wage 14**
*Plaintiff Against All Defendants*

22   119.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of the

23   complaint as if fully alleged herein, and further alleges as follows:

24   / /

120.    At all relevant times, Defendants failed to provide Plaintiff with accurate itemized wage information on a pay period receipt as required by Labor Code section 226(a). Plaintiff alleges Defendants failed to provide accurate wage statements since they failed to pay Plaintiff all the premium wages required by Labor Code sections 510, 862, and 1198.

121.    Employers in violation of Labor Code section 226(a) are subject to a penalty of up to four thousand dollars ($4,000.00) pursuant to Labor Code section 226(e).

122.    As a result of Defendants' unlawful acts, Plaintiff was injured and suffered losses in amounts to be determined at trial and is entitled to recover actual damages or fifty dollars ($50.00) for the first violation and an additional one hundred dollars ($100.00) for each additional violation, in an aggregate amount not to exceed four thousand dollars ($4,000.00), whichever is greater, in an amount to be determined at trial together with attorneys' fees and costs, under Labor Code section 226(e).

## SEVENTH CAUSE OF ACTION
## FAILURE TO PAY WAGES WHEN DUE DURING EMPLOYMENT
### California Labor Code § 210
*Plaintiff Against All Defendants*

123.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein, and further alleges as follows:

124.    At all relevant times, Defendants failed to pay Plaintiff all wages due as required by Labor Code section(s) 205 and/or 205.5.

125.    Employers in violation of Labor Code section(s) 205 and/or 205.5 are subject to a penalty of one hundred dollars ($100) for any initial violation, and two hundred dollars ($200), plus 25 percent of the amount unlawfully withheld, for subsequent violations, or any willful or intentional violation pursuant to Labor Code section 210(a).

/ /

/ /

126.     As a result of Defendants' unlawful acts, Plaintiff is entitled to recover two hundred dollars ($200), plus 25 percent of the amount unlawfully withheld for each willful or intentional violation under Labor Code section 210(a), in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**FAILURE TO PAY WAITING TIME PENALTIES**
**California Labor Code §§ 201, 202, and 203**
*Plaintiff Against All Defendants*

127.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein, and further alleges as follows:

128.     Pursuant to Labor Code sections 201 and 202, an employer is required to promptly pay all compensation owing to an employee upon their separation from employment. Labor Code section 203 provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the employee's wages until the back wages are paid in full or an action is commenced. The penalty cannot exceed thirty (30) days of wages.

129.     Plaintiff is entitled to compensation for all wages earned, including without limitation, the overtime and minimum wages owed.

130.     Plaintiff was constructively discharged from his employment within the meaning of Labor Code section 201 but was not paid all wages due at the time of termination pursuant to Labor Code section 201.

131.     To date, Defendants have willfully failed to pay Plaintiff all wages due.

132.     As a result of Defendants' willful failure to pay Plaintiff all wages due in accordance with Labor Code section 201, Plaintiff is entitled to waiting time penalties pursuant to Labor Code section 203 in an amount equal to 30 times his daily rate of pay in an amount to be determined at trial.

/ /

/ /

**NINTH CAUSE OF ACTION**
**FAILURE TO PROVIDE EMPLOYMENT RECORDS**
**California Labor Code §§ 226(f) and 1198.5**
*Plaintiff Against WESTERN RANGE and PHILLIP T. ESNOZ, individually*
*and dba PHILLIP ESNOZ FARMS*

133.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein, and further alleges as follows:

134.     Pursuant to Labor Code sections 226(b) and (c), a current or former employee must be provided copies of records required to be maintained by an employer under Labor Code section 226(a) upon request. Labor Code section 226(f) entitles an employee to recover a penalty of $750.00 and injunctive relief if an employer fails to provide payroll records within 21 days.

135.     Pursuant to Labor Code section 1198.5, an employer must provide a current or former employee, upon request, a copy of that employee's personnel records. Labor Code section 1198.5(k) entitles an employee to recover a penalty of $750.00 and injunctive relief if an employer fails to provide payroll records within 30 days.

136.     Plaintiff requested payroll records and personnel records by sending letters to Defendants via certified mail on July 11, 2022.

137.     To date, Defendants have not provided any or all payroll or personnel records requested.

138.     As a result of Defendants' failure to provide Plaintiff all payroll and personnel records in accordance with Labor Code sections 226 and 1198.5, Plaintiff is entitled injunctive relief and to penalties pursuant to Labor Code sections 226(f) and 1198.5(k) in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**SOLICITATION OF EMPLOYEE BY MISREPRESENTATION**
**California Labor Code §§ 970 and 972**
*Plaintiff Against All Defendants*

139.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as if fully alleged herein, and further alleges as follows:

140.    Pursuant to Labor Code section 970,

No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either: (a) the kind, character, or existence of such work; (b) the length of time such work will last, or the compensation therefor; (c) The sanitary or housing conditions relating to or surrounding the work…

141.    Pursuant to Labor Code section 972 any person who violates any provision of section 970 is liable to the aggrieved party for double damages resulting from such misrepresentations.

142.    Defendants directly influenced and persuaded Plaintiff to move from Junín, Peru to California to work by making false written representations. The WESTERN RANGE representative, acting as an agent for the Defendants, provided several documents to Plaintiff which explained the kind of compensation, housing, food, transportation, and other rights and benefits he would receive for working in California.

143.    Plaintiff did not receive the contractual benefits that persuaded him to work in the U.S. Instead, he resided in substandard living conditions, with insufficient food and water, among other things, and insufficient wages.

144.    As a result of Defendants' knowing false representations concerning his working conditions, Plaintiff is entitled to double the damages resulting from such misrepresentations, in an amount to be determined at trial.

/ /

/ /

/ /

/ /

1

2

3

### ELEVENTH CAUSE OF ACTION
### VIOLATION OF THE UNLAWFUL COMPETITION LAW (UCL)
### California Bus. & Profs. Code §§ 17200, *et seq.*
*Plaintiff Against All Defendants*

4       145.   Plaintiff re-alleges and incorporates by reference each preceding paragraph of the

5   complaint as fully set forth herein and further alleges that:

6       146.   Plaintiff sues each Defendant on his own behalf pursuant to Business and Professions

7   Code sections 17200, *et seq.*

8       147.   Defendants' conduct as alleged in this complaint has been and continues to be unfair,

9   unlawful, and harmful to Plaintiff and those similarly situated. Plaintiff seeks to enforce important rights

10  affecting the public interest within the meaning of California Code of Civil Procedure section 1021.5.

11      148.   Plaintiff is a "person" within the meaning of Business and Professions Code section

12  17204 who has suffered injury in fact as a result of Defendants' unfair competition, and therefore has

13  standing to bring this claim for injunctive relief, restitution, and other appropriate equitable relief.

14      149.   Business and Professions Code sections 17200, *et seq.* prohibits unlawful, unfair, and

15  fraudulent business practices. Through the conduct alleged in this complaint, Defendants have acted

16  contrary to California public policy, have violated specific provisions of the California Labor Code, and

17  have engaged in other unlawful and unfair business practices in violation of Business and Professions

18  Code sections 17200, *et seq.*, depriving Plaintiff of rights, benefits, and privileges guaranteed under law.

19      150.   Defendants have committed unfair and unlawful business practices within the meaning

20  of Business and Professions Code sections 17200, *et seq.* by engaging in conduct that includes, but is

21  not limited to the following:

22      a.   Failing to reimburse Plaintiff for the cost(s) of obtaining the necessary visas to enter the

23           United States;

24  / /

b. Failing to reimburse Plaintiff for expenses incurred for tools and equipment necessary to discharge his duties in violation of Labor Code section 2802;

c. Failing to provide adequate provisions of food and a means of preserving food and preventing spoilage as required under the job orders and federal regulations;

d. Failing to provide housing in compliance with the sheepherder standards as required under the job orders and federal regulations;

e. Failing to compensate Plaintiff for all hours worked in violation of Labor Code sections 1194, 1197, and 218.6, and the applicable provisions of Wage Order 14-2001 (8 Cal. Code of Regs. § 11140);

f. Failing to pay overtime premium wages in violation of Labor Code sections 510, 1197,1194, 218, 218.6, 860, 861, 862;

g. Failing to provide accurate itemized wage statements as required by Labor Code section 226(a);

h. Failing to pay Plaintiff all wages owed upon separation from employment in violation of Labor Code section 203.

151.   As a direct result of the unfair, unlawful, and anti-competitive conduct alleged in this complaint, Defendants have acted contrary to law and contrary to public policy and have thus engaged in unlawful and unfair business practices in violation of Business and Professions Code sections 17200 *et seq.* Defendants have engaged in such conduct for their own economic self-interest, to increase their profits, and to the detriment of business competitors whose conduct complies with California law and public policy.

152.   Through their unfair business practices alleged herein, Defendants have received and retained and continue to receive and retain funds that rightfully belong to Plaintiff and have produced further profits with those funds. As a result, Defendants have been unjustly enriched and have achieved

an unfair competitive advantage over their legitimate business competitors at the expense of their employee(s) and the public at large.

153.     Plaintiff is entitled to and does seek all relief as may be necessary to restore to Plaintiff all money and property which Defendants have acquired, or of which Plaintiff has been deprived, by means of the Defendants' unfair and unlawful business practices, and to restore to Plaintiff the ill-gotten gains obtained by Defendants through those practices.

154.     Plaintiff is informed and believes and thereon alleges that during his employment with Defendants, Defendants' conduct injured his interests resulting in economic loss to him.

155.     Injunctive relief pursuant to Business and Professions Code section 17203 is necessary to prevent Defendants from continuing to engage in unfair business practices as alleged in this Complaint. Defendants, and each of them, and/or persons acting in concert with them, have done, are now doing, and will continue to do or cause to be done, the illegal acts alleged in this Complaint, unless restrained and enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. Plaintiff has no plain, speedy, or adequate remedy at law, for reasons which include but are not limited to the following: (a) it is difficult to measure the amount of monetary damages that would compensate Plaintiff for Defendants' wrongful acts; and (b) in any event, pecuniary compensation alone would not afford adequate and complete relief. The continuing violation of law by Defendants will cause great and irreparable damage to Plaintiff and others similarly situated unless Defendants are immediately restrained from committing further illegal acts.

156.     Business and Professions Code section 17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices. Plaintiff seeks restitution of all unpaid wages owing to himself, according to proof, as well as the declaratory and injunctive relief described herein.

/ /

157.     Plaintiff requests that the Court issue an Order requiring Defendants to pay lawful wages to prevent this anti-competitive behavior in the future, and that they pay restitution.

## TWELFTH CAUSE OF ACTION
### ASSAULT
*Plaintiff Against Defendant PHILLIP T. ESNOZ, individually and*
*dba PHILLIP ESNOZ FARMS*

158.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

159.     In late November 2021, in Kern County, California, Defendant PHILLIP T. ESNOZ nearly hit Plaintiff with his truck while chasing escaped sheep. Defendant PHILLIP T. ESNOZ came within approximately five feet of hitting Plaintiff with his truck before Plaintiff jumped out of the way, then came to a stop and berated and threatened Plaintiff.

160.     To make out a claim for assault under California law, a plaintiff must establish (1) that a defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that the plaintiff was put in imminent apprehension of such contact. *Duncan v. Cty. of Sacramento*, No. 2:06-cv-0647-GEB-DAD, 2008 U.S. Dist. LEXIS 13814, at *16 (E.D. Cal. Feb. 22, 2008) (citing *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004)).

161.     In doing the acts as alleged above, Defendant PHILLIP T. ESNOZ intended to cause the imminent apprehension of harmful contact to Plaintiff. As a result of Defendant's acts as alleged above, Plaintiff, in fact, was placed in imminent apprehension of such contact.

162.     Defendant's conduct was willful and malicious and was intended to oppress and cause injury to Plaintiff. Plaintiff is therefore entitled to an award of punitive damages.

163.     At no time did Plaintiff consent to any of Defendant's acts alleged above.

164.     Plaintiff is entitled to recover and requests compensatory and punitive damages, the exact amount of which will be determined at trial.

### THIRTEENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*Plaintiff Against Defendant PHILLIP T. ESNOZ, individually*
*and dba PHILLIP ESNOZ FARMS*

165.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

166.    Defendant PHILLIP T. ESNOZ engaged in extreme and outrageous conduct towards Plaintiff and in doing so, caused Plaintiff to suffer severe emotional distress. PHILLIP T. ESNOZ, as Plaintiff's employer and direct supervisor, held a position of authority and control over Plaintiff and had the potential to abuse that power.

167.    While Plaintiff worked under PHILLIP T. ESNOZ's direct supervision, PHILLIP T. ESNOZ subjected Plaintiff to verbal abuse, isolation, and extreme surveillance. PHILLIP T. ESNOZ exploited Plaintiff's vulnerability as a temporary visa employee. PHILLIP T. ESNOZ intimidated and controlled Plaintiff into working constantly, not interacting with passersby, and not leaving the worksite. Plaintiff reasonably feared losing his job and being deported if he upset or disobeyed PHILLIP T. ESNOZ.

168.    Defendant PHILLIP T. ESNOZ acted with the intention of causing, or with reckless disregard of causing, emotional distress.

169.    Plaintiff has suffered severe emotional distress including but not limited to anxiety, loss of sleep, recurring nightmares, and sensations of panic due to the stress and physical harm caused by the threats, surveillance, and assault.

170.    Defendant PHILLIP T. ESNOZ's conduct was malicious, fraudulent or oppressive, or taken in conscious disregard of the rights, safety, and economic condition of Plaintiff, as defined in California Civil Code section 3294, entitling him to an award of exemplary damages.

//

1

2

3

4

5

### FOURTEENTH CAUSE OF ACTION
### VIOLATIONS OF THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008 ("TVPRA")
### 18 U.S.C. §§ 1589 and 1595
### For the Period July 2018 – July 2021
*Plaintiff Against Defendants WESTERN RANGE and PHILLIP T. ESNOZ, as trustee and beneficiary of the Esnoz, Joe S. & Sharron L. Trust and as successor in interest of Joe S. Esnoz, dba Joe Esnoz Farms and Joe S. Esnoz*

6

7

171.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

8

9

10

11

172.    The TVPRA allows victims to "bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA])." 18 U.S.C. § 1595(a).

12

13

14

173.    The TVPRA prohibits forced labor, which includes, in part, knowingly providing or obtaining labor or services through means of (1) abuse or threatened abuse of law or legal process and (2) serious harm or threats of serious harm. 18 U.S.C. § 1589 (a)(2)-(3).

15

16

174.    Joe S. Esnoz knowingly obtained Plaintiff's labor by repeatedly threatening deportation in a manner that constituted a threatened abuse of the legal process under 18 U.S.C. § 1589(a)(3).

17

18

19

175.    Joe S. Esnoz knowingly benefitted from participation in a venture with his employee and recruiter, Elias Huaynate, by accepting Plaintiff's labor, in knowing or reckless disregard of the fact that the venture provided or obtained Plaintiff's labor in violation of 18 U.S.C. § 1589(a).

20

21

22

23

176.    Joe S. Esnoz knew or should have known that Huaynate provided or obtained labor from Plaintiff by charging an exorbitant recruitment fee, then requiring Plaintiff to pay the fee with almost the entirety of his earnings for his first several months of work, thereby causing Plaintiff serious financial harm under 18 U.S.C. § 1589(a)(2).

24

/ /

177.     Defendant WESTERN RANGE knowingly benefited from participation in a venture with Joe S. Esnoz by, on information and belief, receiving financial compensation to facilitate Plaintiff's employment with Joe S. Esnoz, in knowing or in reckless disregard of the fact the venture provided or obtained labor for the Plaintiff in violation of 18 U.S.C. section 1589(a). See 18 U.S.C. § 1589(b).

178.     Plaintiff is therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. section 1595(a), as well as mandatory restitution under 18 U.S.C. section 1593.

179.     Plaintiff is entitled to recover civil penalties up to three times his actual damages or ten thousand dollars, whichever is greater, according to California Civil Code section 52.5.

**FIFTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS**
**PROTECTION REAUTHORIZATION ACT OF 2008 ("TVPRA")**
**18 U.S.C. §§ 1595(a) and 1590**
**For the Period of July 2018 – July 2021**
*Plaintiff Against Defendants WESTERN RANGE and PHILLIP T. ESNOZ, as trustee*
*and beneficiary of the Esnoz, Joe S. & Sharron L. Trust and as successor in interest*
*of Joe S. Esnoz, dba Joe Esnoz Farms and Joe S. Esnoz*

180.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

181.     The TVPRA prohibits knowingly recruiting, harboring, transporting, providing, or obtaining any person for labor in violation of [the TVPRA]. 18 U.S.C. §1590.

182.     Defendant WESTERN RANGE and Joe S. Esnoz knowingly participated in a venture to recruit, harbor, transport, provide, or obtain Plaintiff for his labor and services in violation of 18 U.S.C. section 1589.

/ /

/ /

183.     Plaintiff is therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. section 1595(a), as well as mandatory restitution under 18 U.S.C. section 1593.

184.     Plaintiff is entitled to recover civil penalties up to three times his actual damages or ten thousand dollars, whichever is greater, according to California Civil Code section 52.5.

### SIXTEENTH CAUSE OF ACTION
**VIOLATIONS OF THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008 ("TVPRA")**
**18 U.S.C. §§ 1595(a) and 1593A**
**For the Period of July 2018 – July 2021**
*Plaintiff Against Defendants WESTERN RANGE and PHILLIP T. ESNOZ, as trustee and beneficiary of the Esnoz, Joe S. & Sharron L. Trust and as successor in interest of Joe S. Esnoz, dba Joe Esnoz Farms and Joe S. Esnoz*

185.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

186.     Under 18 U.S.C. section 1595, a victim may bring a claim for violation of 18 U.S.C. section 1593A against any individual or business that knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act violating 18 U.S.C. sections 1589 and 1590, knowing or in reckless disregard of the fact that the venture has committed such violations.

187.     As alleged herein, Defendant WESTERN RANGE and Joe S. Esnoz violated section 1593A by knowingly benefitting from participation in a venture, knowing or in reckless disregard of the fact that the venture violated sections 1589 and 1590.

188.     Plaintiff is therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. section 1595(a), as well as mandatory restitution under 18 U.S.C. section 1593.

/ /

189.     Plaintiff is entitled to recover civil penalties up to three times his actual damages or ten thousand dollars, whichever is greater, according to California Civil Code section 52.5.

**SEVENTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS**
**PROTECTION REAUTHORIZATION ACT OF 2008 ("TVPRA")**
**18 U.S.C. §§ 1595(a) and 1589(b)**
**For the period of October 2021 – December 2021**
*Plaintiff Against Defendants WESTERN RANGE and PHILLIP T. ESNOZ,*
*individually and dba PHILLIP ESNOZ FARMS*

190.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

191.     The TVPRA allows victims to "bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA])." 18 U.S.C. § 1595(a).

192.     The TVPRA prohibits knowingly providing or obtaining labor or services through means of forced labor: force or threats of force; serious harm or threats of serious harm; and "any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person . . . would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a).

193.     Defendant PHILLIP T. ESNOZ knowingly obtained Plaintiff's labor through intimidation, surveillance, verbal abuse, and assault of Plaintiff that caused Plaintiff serious psychological harm under 18 U.S.C. section 1589(c)(2).

194.     Defendant PHILLIP T. ESNOZ knowingly obtained Plaintiff's labor by a scheme, plan, or pattern designed to isolate and intimidate Plaintiff, which, in the totality of circumstances, was intended to and did cause Plaintiff to believe he would suffer serious harm if he was to leave the employ of PHILLIP T. ESNOZ, in violation of 18 U.S.C. section 1589(a)(4).

/ /

195.    Defendant WESTERN RANGE knowingly benefited from participation in a venture with PHILLIP T. ESNOZ by, on information and belief, receiving financial compensation to facilitate Plaintiff's employment with PHILLIP T. ESNOZ, in knowing or in reckless disregard of the fact the venture provided or obtained labor for the Plaintiff in violation of 18 U.S.C. section 1589(a). *See* 18 U.S.C. § 1589(b).

196.    Plaintiff is therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. section 1595(a), as well as mandatory restitution under 18 U.S.C. section 1593.

197.    Plaintiff is entitled to recover civil penalties up to three times his actual damages or ten thousand dollars, whichever is greater, according to California Civil Code section 52.5.

## EIGHTEENTH CAUSE OF ACTION
### VIOLATIONS OF THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008 ("TVPRA")
### 18 U.S.C. §§ 1595(a) and 1590
### For the Period of October 2021 – December 2021
*Plaintiff Against Defendants WESTERN RANGE and PHILLIP T. ESNOZ, individually and dba PHILLIP ESNOZ FARMS*

198.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

199.    The TVPRA prohibits knowingly recruiting, harboring, transporting, providing, or obtaining any person for labor in violation of [the TVPRA]. 18 U.S.C. § 1590.

200.    Defendants WESTERN RANGE and PHILLIP T. ESNOZ knowingly participated in a venture to recruit, harbor, transport, provide, or obtain Plaintiff for his labor and services in violation of 18 U.S.C. section 1589.

201.    Plaintiff is therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. section 1595(a), as well as mandatory restitution under 18 U.S.C. section 1593.

202.     Plaintiff is entitled to recover civil penalties up to three times his actual damages or ten thousand dollars, whichever is greater, according to California Civil Code section 52.5.

**NINETEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008 ("TVPRA")**
**18 U.S.C. §§ 1595(a) and 1593A**
**For the Period of October 2021 – December 2021**
*Plaintiff Against Defendants WESTERN RANGE and PHILLIP T. ESNOZ,*
*individually and dba PHILLIP ESNOZ FARMS*

203.     Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

204.     Under 18 U.S.C. section 1595, a victim may bring a claim for violation of 18 U.S.C. section 1593A against any individual or business that knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act violating 18 U.S.C. sections 1589 and 1590, knowing or in reckless disregard of the fact that the venture has committed such violations.

205.     As alleged herein, Defendants WESTERN RANGE and PHILLIP T. ESNOZ, individually and dba PHILLIP ESNOZ FARMS, violated section 1593A by knowingly benefitting from participation in a venture, knowing or in reckless disregard of the fact that the venture violated sections 1589 and 1590.

206.     Plaintiff is therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. section 1595(a), as well as mandatory restitution under 18 U.S.C. section 1593.

207.     Plaintiff is entitled to recover civil penalties up to three times his actual damages or ten thousand dollars, whichever is greater, according to California Civil Code section 52.5.

/ /

/ /

### TWENTIETH CAUSE OF ACTION
### DAMAGES PURSUANT TO PROBATE CODE §§ 19008, 19400, AND 13109
*Plaintiff Against PHILLIP T. ESNOZ as successor trustee to the*
*Esnoz Joe S. & Sharron L. Trust and successor in interest to Joe S. Esnoz*

208.    Plaintiff re-alleges and incorporates by reference each preceding paragraph of the complaint as fully set forth herein and further alleges that:

209.    Plaintiff was employed by Defendants' father, Joe S. Esnoz (hereinafter "Decedent" or "Settlor"), from on or about July 18, 2018 until July 2, 2021. Pursuant to California Code of Civil Procedure sections 377.20, 377.40, and 377.42, and in compliance with California Code of Civil Procedure section 366.2, Plaintiff claims the sum of $17,765.13 for unpaid reimbursements and wages for labor services provided to the Decedent as well as $21,363.55 in damages for Decedent's breach of contract, totaling $39,128.68.

210.    On information and belief, at all times relevant, the Decedent was the Settlor, and Defendant PHILLIP T. ESNOZ is a successor trustee and beneficiary of the Esnoz Joe S. & Sharron L. Trust.

211.    Pursuant to Probate Code section 19001, upon the Decedent's death the property of the Trust Estate became subject to the claims of the Decedent's creditors, including Plaintiff herein.

212.    On information and belief, Defendant PHILLIP T. ESNOZ is a beneficiary of the Trust Estate and has received distributions from the Trust Estate.

213.    On information and belief, no discretionary trust claims procedures set forth in Probate Code section 19000, *et seq.* have been initiated. As a result, the Trust Estate is liable to the Decedent's creditors, including Plaintiff, as otherwise provided by law. Cal. Prob. Code § 19008.

214.    In addition, on information and belief, the assets of the Trust Estate have been distributed to PHILLIP T. ESNOZ as a beneficiary of the Trust Estate, and Defendant PHILLIP T. ESNOZ is therefore personally liable for the Decedent's unsecured debts. Cal. Prob. Code § 19400.

215.    On information and belief, the gross value of the Decedent's real and personal property, aside from any property held in the Trust Estate, did not exceed $166,250.00. Defendant PHILLIP T. ESNOZ is a successor in interest of the Estate of Joe S. Esnoz (hereinafter the "Decedent's Estate"), and that Decedent's Estate is being or has been distributed without a formal probate proceeding. As such, pursuant to Probate Code sections 13108 and 13109, Defendant PHILLIP T. ESNOZ is personally liable for the Decedent's unsecured debts to the extent permitted under Probate Code section 13112.

216.    There is now due, owing, and unpaid from defendant PHILLIP T. ESNOZ, as successor trustee to the Esnoz Joe S. & Sharron L. Trust and successor in interest to Joe S. Esnoz, to Plaintiff the sum of $39,128.68, with interest on the unpaid balance at the legal rate of ten percent (10%) per annum, according to proof at time of trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully prays for judgment against Defendants and each of them as follows:

As to the First Cause of Action:

1.    An award of restitution and damages arising out of Defendants' breach of contract in amounts to be determined at trial.

As to the Second Cause of Action:

1.    An award of restitution and damages arising out of Defendants' breach of contract in amounts to be determined at trial.

As to the Third Cause of Action:

1.    An award of minimum wages due in an amount to be proven at trial, but not less than the difference between wages actually received and the amounts due under applicable law and interest thereof;

/ /

2.    An award of liquidated damages in an amount equal to unpaid minimum wages, according to proof, plus interest on that amount;

3.    Attorneys' fees and costs pursuant to Labor Code section 1194(a).

As to the Fourth Cause of Action:

1.    An award of overtime and double time wages due in an amount to be proven at trial, but not less than the difference between wages actually received and the amounts due under applicable law and interest thereof;

2.    Attorneys' fees and costs pursuant to Labor Code section 218.5.

As to the Fifth Cause of Action:

1.    An award to Plaintiff of expenses paid or deducted for visa fees and travel expenses and tools and equipment necessary to perform the work for Defendants in an amount to be proven at trial;

2.    Attorneys' fees and costs pursuant to Labor Code section 2802.

As to the Sixth Cause of Action:

1.    An award of actual damages for Defendants' failure to provide accurate itemized wage statements in an amount to be proven at trial or in the alternative, $50.00 for the first violation and $100.00 for each subsequent violation up to a maximum of $4,000.00 for each Plaintiff;

2.    Attorneys' fees and costs pursuant to Labor Code section 226(e).

As to the Seventh Cause of Action:

1.    An award of damages for Defendants' failure to timely pay wages during employment in an amount to be proven at trial or in the alternative, $200.00 plus 25 percent of the amount unlawfully withheld for each willful or intentional violation under Labor Code section 210(a), in an amount to be determined at trial.

As to the Eight Cause of Action:

1. An award of waiting time penalties equal to 30 times Plaintiff's daily rate of pay pursuant to Labor Code section 203, in an amount to be determined at trial.

As to the Ninth Cause of Action:

1. An award to Plaintiff of $750.00, per Defendant, as penalty for Defendants' failure to payroll records pursuant to Labor Code section 226;

2. An award to Plaintiff of $750.00, per Defendant, as penalty for Defendants' failure to personal records pursuant to Labor Code section 1198.5.

As to the Tenth Cause of Action:

1. An award to Plaintiff of double the amount of compensatory damages resulting from Defendants' misrepresentations pursuant to Labor Code section 972, in an amount to be determined at trial;

2. Attorneys' fees and costs pursuant to Labor Code section 972.

As to the Eleventh Cause of Action:

1. Injunctive relief ordering Defendants to cease the unlawful and unfair business practices as alleged herein;

2. Restitution to Plaintiff in amounts to be proven at trial.

As to the Twelfth Cause of Action:

1. An award to Plaintiff of compensatory and punitive damages in an amount to be determined at trial.

As to the Thirteenth Cause of Action:

1. An award to Plaintiff of exemplary damages in an amount to be determined at trial for Defendant's intentional infliction of emotional distress.

As to the Fourteenth Cause of Action:

1. An award to Plaintiff of restitution, compensatory and punitive damages in amount to be determined at trial;

2. Attorneys' fees and costs pursuant 18 U.S.C. section 1595(a).

As to the Fifteenth Cause of Action:

1. An award to Plaintiff of restitution, compensatory and punitive damages in amount to be determined at trial;

2. Attorneys' fees and costs pursuant 18 U.S.C. section 1595(a).

As to the Sixteenth Cause of Action:

1. An award to Plaintiff of restitution, compensatory and punitive damages in amount to be determined at trial;

2. Attorneys' fees and costs pursuant 18 U.S.C. section 1595(a).

As to the Seventeenth Cause of Action:

1. An award to Plaintiff of restitution, compensatory and punitive damages in amount to be determined at trial;

2. Attorneys' fees and costs pursuant 18 U.S.C. section 1595(a).

As to the Eighteenth Cause of Action:

1. An award to Plaintiff of restitution, compensatory and punitive damages in amount to be determined at trial;

2. Attorneys' fees and costs pursuant 18 U.S.C. section 1595(a).

As to the Nineteenth Cause of Action:

1. An award to Plaintiff of restitution, compensatory and punitive damages in amount to be determined at trial;

2. Attorneys' fees and costs pursuant 18 U.S.C. section 1595(a).

/ /

As to the Twentieth Cause of Action:

1.      An award to Plaintiff for damages in the sum of $35,254.19, plus interest on the unpaid balance at the legal rate of ten percent (10%) per annum, according to proof at time of trial.

As to All Causes of Action:

1.      For attorneys' fees and costs of suit herein generally and pursuant to California Code of Civil Procedure section 1021.5.

2.      For an award of pre-judgment interest as authorized under the law.

3.      For an award of post-judgment interest as authorized under the law.

4.      For such other and further relief as this court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to a jury trial.

Date: September 27, 2022                  **CALIFORNIA RURAL LEGAL ASSISTANCE, INC.**

                                            __/s/ *Amelia D. Haney* _____

                                            Amelia D. Haney
                                            *Attorneys for Plaintiff*

EXHIBIT A



**U.S. Department Labor**
**Employment and Training Administration**

OMB Control No. 1205-0134
Expiration Date: March 31, 2019

**Agricultural and Food Processing Clearance Order ETA Form 790**
**Orden de Empleo para Obreros/Trabajadores Agrícolas y Procesamiento de Alimentos**

**(Print or type in each field block – To include additional information, go to block # 28 – Please follow Step-By-Step Instructions)**
**(Favor de usar letra de molde en la solicitud – Para incluir información adicional vea el punto # 28 – Favor de seguir las instrucciones paso-a-paso)**

---

1. Employer's and/or Agent's Name and Address (Number, Street, City, State and Zip Code / Nombre y Dirección del Empleador/Patrón y/o Agente (Número, Calle, Ciudad, Estado y Código Postal ):

**WESTERN RANGE ASSOCIATION A JOINT EMPLOYER 161 FIFTH AVE SOUTH SUITE 100 TWIN FALLS, ID 83301**

a) Federal Employer Identification Number (FEIN) / Número federal de Identificación del Empleador:

[REDACTED]

b) Telephone Number / Número de Teléfono:
**208-595-2226**

c) Fax Number / Número de Fax:
**208-595-2275**

d) E-mail Address / Dirección de Correo Electrónico:
**legal@westernrange.net**

2. Address and Directions to Work Site / Domicilio y Direcciones al lugar de trabajo:

**PHILLIP ESNOZ      FEIN** [REDACTED]
**17846 WASCO AVE**

**SHAFTER, CA 93263-0000**

**Multiple worksites in Kern county and kings county, California will be used. Worksite locations varies depending on season, weather and gazing rotation. Please contact the employer at the headquarters address listed above for specific directions to the current worksite.**

3. Address and Directions to Housing / Domicilio y Direcciones al lugar de vivienda:
a) Description of Housing / Descripcion de la vivienda:

**Three mobile range units with the capacity of one. Total housing of three. The housing is available and sufficient to accommodate the workers bein requested.**

**Mobile range camps are located in various location on private, state and federal land in in Kern county and kings county, California. Housing locations vary depending upon season, weather and grazing rotation.**

---

| Nos. 4 through 8 for STATE USE ONLY<br>Números 4 a 8 para USO ESTATAL |
| --- |

4. SOC (O*NET/OES) Occupational Code / Còdigo Industrial:

*45-2093*

a. SOC (ONET/OES) Occupational Title / Titulo Ocupacional

*Farmworkers, Farm, Ranch and Agricultural Animals*

5. Job Order No. / Num. de Orden de Empleo:

*15584453*

6. Address of Order Holding Office (include Telephone number) / Dirección de la Oficina donde se radicó la oferta (incluya el número de teléfono):

*Bakersfield AJCC*
*1000 E. Belle Terrace Bakersfied, CA 93307*

a. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (Incluya el número de teléfono de su línea directa).

*EDD Representative*
*(661) 325-4473*

7. Clearance Order Issue Date / Fecha de Emisión de la Orden de Empleo:

*10-4-17*

8. Job Order Expiration Date / Fecha de Vencimiento o Expiración de la Orden de Empleo:

*6-7-18*

9. Anticipated Period of Employment / Período anticipado o previsto de Empleo:

From / Desde: **12-08-2017**      To / Hasta: **12-06-2018**

10. Number of Workers Requested / Número de Trabajadores Solicitados:

**1**

11. Anticipated Hours of Work per Week / Horas Anticipadas/Previstas de Trabajo por Semana. Total:***ON CALL FOR UP TO 24 HOURS PER DAY, 7 DAYS A WEEK***

Sunday / Domingo _____      Thursday /Jueves_____
Monday / Lunes _____        Friday / Viernes_____
Tuesday / Martes _____      Saturday / Sábado _____
Wednesday / Miércoles _____

12. Anticipated range of hours for different seasonal activities. / Rango previsto de horas par alas diferentes actividades de la temporada:

**N/A**

13. Collect Calls Accepted from: / Aceptan Llamadas por Cobrar de:

Employer / Empleador:      Yes / Si ☒   No ☐

14. Describe how the employer intends to provide either 3 meals a day to each worker or furnish free and convenient cooking and kitchen facilities for workers to prepare meals / Describa cómo el empleador tiene la intención de ofrecer, ya sea 3 comidas al día a cada trabajador, o proporcionar gratuitamente instalaciones para cocinar.

**Housing contains free and convenient cooking facilities and employer will provide three prepared meals a day or adequate food, free of charge, based on the requisition by worker, for workers to prepare their own meals while in camp or on the range. Employer may at times provide prepared meals for workers consumption. Employer will provide worker a minimum of 4.5 gallons of potable water per day per worker for drinking and cooking purposes. Additional clean water will be provided to meet the workers laundry and bathing needs.**

15. Referral Instructions and Hiring Information / Instrucciones sobre cómo Referir Candidatos/Solicitantes - (Explain how applicants are to be hired or referred, and the Employer's/Agent's available hour to interview workers / Explique cómo los candidatos serán contratados o referidos, y las horas disponibles del empleador/agente para entrevistar a los trabajadores). See instructions for more details / Vea las instrucciones para más detalles.

**Open Job Order, please contact Local State Employment office. The employment office will refer each applicant to Western Range Association. Western Range Association will conduct a full telephone interview with the applicant. The office hours for Western Range Association are Monday - Friday from 8:00 a.m. to 4:30 p.m., Mountain Standard time 208-595-2226 ext. 115. All employers must continue to be, open to any qualified U.S worker regardless of race, color, national origin, age, sex, religion, handicap, or citizenship. No strike requirements The worksite does not currently have workers on strike or being locked out in the course of a labor dispute.**

**Western Range Association and its rancher members maintain a strong commitment to providing a safe, efficient, and productive work environment. H-2A employee involvement with alcohol and drugs could be extremely dangerous to all employees and others, and disruptive to the workplace. Use, manufacture, distribution or possession of an illegal drug, or misuse of a prescription drug is cause for termination. Any person found to be under the influence of alcohol or drugs while working will be terminated.**

**Western Range Association and its rancher members adopt the public policy considerations of the California Drug Free Workplace Act (CA Gov. Code § 8355) as well as its federal counterpart. Western Range maintains a strong commitment to providing a safe, efficient, and productive work environment. H-2A employee involvement with alcohol and drugs could be extremely dangerous to the employee himself, to all other employees, the general public and third parties, and it is disruptive to the workplace. H-2A herders provide the primary care for hundreds of animals and are presumed to be in safety and security sensitive positions. While Western Range recognizes that it is neither a California government employer nor a California government contractor, it nonetheless adopts certain policies and procedures applicable to government workers as set forth herein.**

**Any person who is on duty or on standby who is found to use, possess, or be under the influence of illegal or unauthorized drugs or other illegal mind-altering substances or who uses or is under the influence of alcohol to any extent that would impede his ability to perform his or her duties safely and effectively will be terminated. Manufacture, distribution or possession of an illegal drug, or misuse of a prescription drug is also cause for termination.**

**Applicants who are to be employed in the sensitive positions stated above, may be subject to pre-employment and reasonable cause drug and alcohol testing (substance testing) at the employer's expense.**

16. Job description and requirements / Descripción y requisitos del trabajo:

Attends sheep and/or goat flock grazing on range or pasture: Herds flock and rounds up strays using trained dogs. Beds down flock near evening campsite. Guards flock from predatory animals and from eating poisonous plants. Drenches sheep and/or goats. May examine animals for signs of illness and administer vaccines, medications and insecticides according to instructions. May assist in lambing, docking, and shearing. The work activities involve the herding or production of livestock (which includes work that is closely and directly related to herding and/or the production of livestock). Must have 3 months experience with 800 - 1000 head flocks. One reference required. More than 50% of work will be performed on the range. Worker must be a qualified sheepherder. ***Hours worked footnote: On call for up to 24 hours 7 days a week***

Cuidar rebanos de ovejas o cabras en campo abierto o cerrado. Cuidar rebanos con la ayuda de perros entrenados para dicho trabajo. Ayudar a mantener las manadas juntas para cuando llega la noche. Proteger a los rebanos de animales de rapina. Tambien cuidar que los rebanos no coman plantas venenosas. Examinar los rebanos en caso que haya señales de enfermedad. Administrar vacunas, medicinas e insecticidas de acuerdo con las instrucciones recibidas. Asistir durante la epoca de parición, esquilar y trasquilar. Las actividades de trabajo incluyen pastoreo o produccion de ganado (el cual incluye trabajo directamente relacionado al pastoreo y/o a la produccion de ganado). Dar de comer a los rebanos incluyendo comidas especiales o suplementarias. Se necesita tener 3 meses de experiencia con manadas entre 800 - 1000 cabezas. Se requerira por lo menos una referencia. Mas del 50% del trabajo se hara en el campo. Trabajador necesita esta un pastor. ***Nota: Horas de trabajo: 24 horas al día y 7 días de la semana***

1. Is previous work experience preferred? / Se prefiere previa experiencia?   Yes / Sí ☒   No ☐   If yes, number of months preferred: / Si es así, numero de meses de experiencia: __3 months/3 meses__

2. Check all requirements that apply:

☐ Certification/License Requirements / Certificación/Licencia Requisitos          ☐ Criminal Background Check / Verificación de antecedentes penales
☐ Driver Requirements / Requisitos del conductor                                  ☒ Drug Screen / Detección de Drogas
☐ Employer Will Train / Empleador entrenará o adiestrará                           ☒ Extensive Pushing and Pulling / Empujar y Jalar Extensamente
☐ Extensive Sitting / Estar sentado largos ratos                                  ☐ Extensive Walking / Caminar por largos ratos
☒ Exposure to Extreme Temp. / Expuesto a Temperaturas Extremas                     ☐ Frequent Stooping / Inclinándose o agachándose con frecuencia
☐ Lifting requirement / Levantar o Cargar _____ lbs./libras                       ☐ OT/Holiday is not mandatory / Horas Extras (sobre tiempo) / Dias Feriados no
☐ Repetitive Movements / Movimientos repetitivos                                      obligatorio

| 17. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas) | | | | | | | |
|---|---|---|---|---|---|---|---|
| Crop Activities **Sheepherder** | Hourly Wage | Piece Rate / Unit(s) | Special Pay (bonus, etc.) | Deductions* | Yes/Si | No | Pay Period / Periodo de Pago |
| Cultivos | Salario por Hora | Pago por Pieza / Unidad(es) | Pagos Especiales (Bono, etc.) | Deducciones | | | /   / |
| | $ | $ | | Social Security / Seguro Social | ☒ | ☐ | Weekly / Semanal |
| | $ | $ | | Federal Tax / Impuestos Federales | ☒ | ☐ | ☐ |
| | $ | $ | | State Tax /Impuestos Estatales | ☒ | ☐ | Bi-weekly/ Quincenal |
| | $ | $ | | Meals / Comidas | ☐ | ☒ | ☐ |
| | $ | $ | | Other (specify) / Otro (especifica) | ☐ | ☒ | Monthly/Mensual $1777.98 ☒ monthly salary |
| Performance based bonuses may be available. | | | | | | | Other/Otro ☒ |

18. More Details About the Pay / Mas Detalles Sobre el Pago:

Employer must keep earning records for 5 years. Employer must pay wages at least twice a month (semi-monthly). Wages must be paid when due 20 CFR 655.122(j)-(m). Employer will furnish the worker on or before each payday written hours and earnings statements meeting the regulatory requirements at 20 CFR 655.122(k). All earnings records and statements will be available for inspection or transcription by the Secretary of a duly authorized and designed representative, and by the worker and Representatives designed by the workers. Employer will pay the worker at least the monthly AEWR, as specified in 655.211, the agreed-upon collective bargaining wage, or the applicable minimum wage imposed by Federal or State law or judicial action, in effect at the time work is performed, whichever is highest, for every month of the job order period or portion thereof.

Employer shall provide housing and board in accordance with the rules and regulations of the federal government of the United States of America.
State income Tax withholdings may be deducted from wages.

19. Transportation Arrangements / Arreglos de Transportación

Transportation from point of recruitment to worksite and from the worksite back to the point of recruitment will be arranged and provided by Employer. Employer will reimburse worker for subsistence costs during travel to worksite no later than the end of the first pay period upon presentation of receipts and from the worksite at the end of the job based on rates established in the applicable regulations. When a longer term contract is negotiated with a U.S. or H-2A worker, the employer is not relieved of the responsibility for reimbursement to the worker for travel and subsistence expenses incurred in getting to the job site which were advanced by the employer and subsequently withheld form the worker's pay until 50% of the original contract period elapsed. These payments will made to the U.S. and H-2A workers at the 50% completion point of the original period of employment (about 6 months). The employer is responsible for return transportation and subsistence expenses if the U.S. and H-2A worker successfully fulfills his/her obligations under the original terms of employment for less than 1 year. However, such payment does not actually have to made to the U.S and H-2A worker until the worker and the employer sever their employer/employee relationship, which will occur at the point in time subsequent to the end of the original period of employment when a longer term contract is negotiated. Successful completion of the original contract or job order entitles the worker to return transportation and subsistence regardless of performance under renewal or extended contract.

Subsistence

All employers must offer subsistence cost to workers being recruited. Determination on subsistence matter shall be made in accordance with 20 C.F.R. 655.173. The new DOL permissible as of March 17, 2017 shall be no more than $12.07 per day or $51 per day with receipts provided to employer, unless the OFLC Certifying Officer approves a higher charge as authorized under 20 CFR 655.173(b) employer will pay higher rate.

20. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, and/or pay workers for this (these) crop activity (ies)? / ¿Es la práctica habitual usar Contratistas de Trabajo Agrícola para reclutar, supervisar, transportar, dar vivienda, y/o pagarle a los trabajadores para este(os) tipo(s) de cosecha(s)?        Yes / Si   ☐    No ☒

If you have checked yes, what is the FLC wage for each activity? / Si contesto "Si," cuál es el salario que le paga al Contratista de Trabajo Agrícola por cada actividad?

21. Are workers covered for Unemployment Insurance? / ¿Se le proporcionan Seguro de Desempleo a los trabajadores?        Yes/Si ☒   No ☐

22. Are workers covered by workers' compensation? / ¿Se le provee seguro de compensación/indemnización al trabajador:        Yes/Si ☒   No ☐

23. Are tools, supplies, and equipment provided at no charge to the workers? / ¿Se les proveen herramientas y equipos sin costo algun o a los trabajadores?
**Employer must provide at no cost to workers an effective means of communication with persons capable of responding to the worker's need in case of an emergency. These means are necessary to perform the work and can include, but are not limited to satellite phone, cell phones, wireless devices, radio transmitters, or other types of electronic communication systems.**        Yes/Si ☒   No ☐

24. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers. (If there are no such arrangements, enter "None".) / Enumere todos los acuerdos o convenios hechos con los propietarios del establecimiento o sus agentes para el pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, i ndique "Ninguno".)

**NONE/NINGUNO**

25. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed.  (If there are no such incidents, enter "None".) / Enumere toda huelga, paro o interrupción de operaciones de trabajo por parte de los empleados en el lugar de empleo. (Si no hay incidentes de este tipo, indique "Ninguno".)
**NONE/NINGUNO**

26. Is this job order to be placed in connection with a future Application for Temporary Employment Certification for H–2A workers? / ¿Esta orden de empleo ha sido puesta en conexión con una futura solicitud de certificación de empleo temporal para trabajadores H-2A?

Yes/Si ☒  No ☐

27. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. / Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones del empleo que se le ofrece, y contiene todos los términos y condiciones materiales ofrecidos.

**Monica Youree, Executive Director, Western Range Association for WESTERN RANGE ASSOCIATION**

Employer's Printed Name & Title / Nombre y Título en Letra de Molde/Imprenta del Empleador

*Monica Youree*

**09-29-2017**

Employer's Signature / Firma y Título del Empleador        Date / Fecha

**READ CAREFULLY,** In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Employment and Training Administration (ETA) nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the American Job Center constitute a contractual job offer to which the American Job Center, ETA or a State agency is in any way a party.

**LEA CON CUIDADO,** En vista de la función básica del Servicio de Empleo establecida por ley, como una entidad de intercambio laboral sin comisiones, es decir, como un foro para reunir a los empleadores y los solicitantes de empleo, ni ETA ni las agencias del estado pueden garantizar la exactitud o veracidad de la información contenida en las órdenes de trabajo sometidas por los empleadores. Ni ninguna orden de trabajo aceptado o contratado en el Centro de Carreras (American Job Center) constituyen una oferta de trabajo contractuales a las que el American Job Center, ETA o un organismo estatal es de ninguna manera una de las partes.

**PUBLIC BURDEN STATEMENT**
The public reporting burden for responding to ETA Form 790, which is required to obtain or retain benefits (44 USC 3501), is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection. The public need not respond to this collection of information unless it displays a currently valid OMB Control Number. This is public information and there is no expectation of confidentiality. Send comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

**DECLARACION DE CARGA PÚBLICA**
La carga de información pública para responder a la Forma ETA 790, que se requiere para obtener o retener beneficios (44 USC 3501), se estima en aproximadamente 60 minutos por respuesta, incluyendo el tiempo para revisar las instrucciones, buscar fuentes de datos existentes, recopilar y revisar la colección. El público no tiene por qué responder a esta recopilación de información a menos que muestre un número de control OMB válido. Esta información es pública y no hay ninguna expectativa de confidencialidad. Envíe sus comentarios acerca de esta carga o cualquier otro aspecto de esta colección, incluyendo sugerencias para reducir esta carga, al U.S. Department of Labor, Employment and Training Administration, Office of Workforce Investment, Room C-4510, 200 Constitution Avenue, NW, Washington, DC 20210.

- 6 -

28.  Use this section to provide additional supporting information (including section Box number).  Include attachments, if necessary. / Utilice esta sección para proporcionar información adicional de apoyo; incluya  el numero de la sección e incluya  archivos adjuntos, si es necesario.

3/4 guarantee: Employers may negotiate longer term contract (up to 3 years with foreign workers provided that any contracts of a year or longer are expressly conditions upon renewal of certification by DOL). In the event certification renewal is not obtained, the contract will be construed as being effective for the period of the initial certification, and the employer is liable for return transportation and subsistence after the worker completes employment for the initial certification period. The 3/4 guarantee for individual employers is based on the 1 year contract as is the requirement for transportation reimbursement at 50% of the contract period.

Employment Contract: Employer provides workers with a copy of the work contract, including any approved modifications on the day work commences or as soon as practically possible. Work contract will be provided in a language understood by the worker. 655.122(q)

First Work Week Guarentee: Employer will provide workers the number of hours of work for the week beginning with the anticipated start date of need.

Abandonment or termination for cause: Workers who voluntarily abandon employment or are terminated for cause, the employer will profile in writing notification to the NPC and DHS no later than 2 days after abandonment occurs. Employer will not be responsible for providing or paying for the subsequent transportation and subsistence expense and the 3/4th guarantee.

Transfer of Workers: Employers may transfer workers to any certified members and will guarantee that workers will be notified at the least 7 working days in advance of such transfer. When a worker objects to a transfer, the association will consider the worker's concerns and preferences. However, ultimate refusal on the part of a worker to a transfer may subject the worker to dismissal based on a lawful, job-related reason. The employer shall provide written notification to the SWA with jurisdiction over the area of intended employment and the Chicago NPC no less than 7 working days prior to the transfer. Such notification shall describe the details of the transfer, including the number and names of workers and employers affected and housing information.

Termination of employment: Pursuant to regulations at 20 CFR 655.122(o),&quot;if before the expiration date specified in the work contract, the services of the worker are no longer required for reasons beyond the control of the employer due to fire, weather, or other Act of God that makes the fulfillment of the contract impossible, the employer may terminate the work contract. Whether such an event constitutes a contract impossibility will be determined by the CO. In the event of such determination of a contract, the employer must fulfill a three-fourths guarantee for the time that has elapsed form the start of the work contract to the time of its termination, as described in paragraph (i)(1) of this section. The employer must make efforts to transfer the worker to the other comparable employment acceptable to the worker, consistent with existing immigration law, as applicable. If such transfer is not affected, the employer must: (1) Return the worker, at the employer's expense, to the place from which the worker, disregarding intervening employment, came to work for the employer, or transport the worker to the worker's next certified H-2A employer, whichever the worker prefers; (2) Reimburse the worker the full amount of any deductions made from the worker's pay by the employer for transportation and subsistence expenses to the place of employment; and (3) Pay the worker for any cost incurred by the worker for transportation and daily subsistence to that employer's place of employment. Daily subsistence must be computed as set forth in paragraph (h) of this section. The amount of the transportation payment must not be less (and is not required to be more) than the most economical and reasonable common carrier transportation charges for the distances involved.

Assurances: Employer agrees to abide by the regulations at 20 CFR 655.135.

Cell phones, along with sufficient minutes of use for communication, are provided, without charge or deposit, to workers during the entire period of employment each worker is visited daily.
Tools, supplies and equipment- Includes dogs, shovel, sleeping bag, rain gear, rain boots, sheep hook, and gloves. In addition to these items, the worker(s) is provided other tools, supplies, and equipment, as required by law, and to work safely and effectively.


The employer will provide sufficient housing that meets the applicable standards, at no cost, to those that will not be able to return to their residence within the same day. For Fixed site housing, the employer will meet the full set of DOL Occupational Safety and Health Administration (OSHA) standards set forth at 29 CFR sec. 1910.142, or the full set of ETA standards at sec. 654.404 through 654.417, whichever are applicable under sec. 6547.404. For range housing, the employer will meet the requirements set forth in sec. 655.235.

**20 CFR 653.501**
**Assurances**

**INTRASTATE AND INTERSTATE CLEARANCE ORDER**

The employer agrees to provide to workers referred through the clearance system the number of hours of work per week cited in Item 11 of the clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 working days prior to the original date of need by so notifying the Order-Holding Office (OHO).  If the employer fails to notify the OHO at least 10 working days prior to the original date of need, the employer shall pay eligible workers referred through the intrastate/interstate clearance system the specified hourly rate or pay, or in the absence of a specified hourly rate or pay, the higher of the Federal or State minimum wage rate for the first week starting with the original anticipated date of need.  The employer may require workers to perform alternative work if the guarantee is invoked and if such alternative work is stated on the job order.

The employer agrees that no extension of employment beyond the period of employment shown on the job order will relieve the employer from paying the wages already earned, or specified in the job order as a term of employment, providing transportation or paying transportation expenses to the worker's home.

The employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws.

The employer agrees to expeditiously notify the OHO or State agency by telephone immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

The employer, if acting as a farm labor contractor, has a valid farm labor contractor registration certificate.

The employer assures the availability of no cost or public housing which meets applicable Federal and State standards and which is sufficient to house the specified number of workers requested through the clearance system.

The employer also assures that outreach workers shall have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107.

Employer's Name   **Monica Youree, Executive Director, Western Range**
**Association for WESTERN RANGE ASSOCIATION**   Date:   **09-29-2017**

*Monica Youree*

Employer's Signature   _____

**Besides the material terms and conditions of the employment, the employer must agree to these assurances if the job order is to be placed as part of the Agricultural Recruitment System.  This assurance statement must be signed by the employer, and it must accompany the ETA Form 790.**

EXHIBIT B

OMB Approval: 1205-0466.
Expiration Date: 8/31/2022

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



## A. Job Offer Information

| 1.  Job Title *   RANGE LAMBER |
|---|

| 2.  Workers Needed * | a. Total | b. H-2A | **Period of Intended Employment** | |
|---|---|---|---|---|
| | 1 | 1 | 3.  Begin Date * 10/1/2021 | 4.  End Date *12/31/2021 |

| 5.  Will this job generally require the worker to be on-call 24 hours a day and 7 days a week? * If "Yes", proceed to question 8.  If "No", complete questions 6 and 7 below. | ☑ Yes   ☐ No |
|---|---|

6.  Anticipated days and hours of work per week *

7.  Hourly work schedule *

| | **a. Total Hours** | | c. Monday | | e. Wednesday | | g. Friday | a. _____ : _____ ☐ AM ☐ PM |
|---|---|---|---|---|---|---|---|---|
| | b. Sunday | | d. Tuesday | | f. Thursday | | h. Saturday | b. _____ : _____ ☐ AM ☐ PM |

**Temporary Agricultural Services and Wage Offer Information**

8a.  Job Duties - Description of the specific services or labor to be performed. *
*(Please begin response on this form and use Addendum C if additional space is needed.)*
See Addendum C

| 8b.  Wage Offer * $  2311 . 24 | 8c.  Per * ☐ HOUR ☒ MONTH | 8d.  Piece Rate Offer § $  . 00  00 | 8e.  Piece Rate Units/Special Pay Information § Employer shall provide housing and board in accordance with the rules and regulations of the federal government of the United States of America. Discretionary performance-based bonuses may be available Payroll advances may be available |
|---|---|---|---|

| 9.  Is a completed **Addendum A** providing additional information on the crops or agricultural activities and wage offers attached to this job offer? * | ☐ Yes ☒ No |
|---|---|

| 10.  Frequency of Pay. *   ☐ Weekly   ☐ Biweekly   ☐ Monthly   ☒ Other (specify):  SEMI-MONTHLY |
|---|

11.  State all deduction(s) from pay and, if known, the amount(s). *
*(Please begin response on this form and use Addendum C if additional space is needed.)*
Social Security, Federal and State Income Tax withholding's may be deducted from wages.

Form ETA-790A                    **FOR DEPARTMENT OF LABOR USE ONLY**                    Page 1 of 8

H-2A Case Number: H-300-21196-465157   Case Status: Full Certification   Determination Date: 07/20/2021   Validity Period: _____ to _____



H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**

**B.  Minimum Job Qualifications/Requirements**

| | |
|---|---|
| 1.  Education: minimum U.S. diploma/degree required. *<br>☒ None  ☐ High School/GED  ☐ Associate's  ☐ Bachelor's  ☐ Master's or Higher  ☐ Other degree (JD, MD, etc.) | |

| | | | |
|---|---|---|---|
| 2.  Work Experience: number of <u>months</u> required. * | 3 | 3.  Training: number of <u>months</u> required. * | 0 |

4.  Basic Job Requirements (check all that apply) *

☐ a. Certification/license requirements      ☒ g. Exposure to extreme temperatures
☐ b. Driver requirements      ☐ h. Extensive pushing or pulling
☐ c. Criminal background check      ☐ i. Extensive sitting or walking
☒ d. Drug screen      ☐ j. Frequent stooping or bending over
☒ e. Lifting requirement 50 lbs.      ☐ k. Repetitive movements

| | | |
|---|---|---|
| 5a.  Supervision: does this position supervise the work of other employees? * | ☐ Yes  ☒ No | 5b.  If "Yes" to question 5a, enter the number of employees worker will supervise. **§** |

6.  Additional Information Regarding Job Qualifications/Requirements.
    *(Please begin response on this form and use Addendum C if additional space is needed.  If no additional skills or requirements, enter "**NONE**" below) *
NONE

**C.  Place of Employment Information**

1.  Address/Location *
24351 HWY 46. ON HWY 46

| 2.  City * | 3.  State * | 4.  Postal Code * | 5.  County * |
|---|---|---|---|
| LOST HILLS | California | 93249 | Kern |

6.  Additional Place of Employment Information  *(If no additional information, enter "**NONE**" below) *
Multiple worksites in Kern County, California will be used. Worksite locations varies depending on season, weather and grazing rotation. Please contact the employer at the headquarters address listed above for specific directions to the current worksite.

| | |
|---|---|
| 7.  Is a completed **Addendum B** providing additional information on the places of employment and/or agricultural businesses who will employ workers, or to whom the employer will be providing workers, attached to this job order? * | ☒ Yes  ☐ No |

**D.  Housing Information**

1.  Housing Address/Location *
24351 HWY 46. ON HWY 46

| 2.  City * | 3.  State * | 4.  Postal Code * | 5.  County * |
|---|---|---|---|
| LOST HILLS | California | 93249 | Kern |

| 6.  Type of Housing * | 7.  Total Units * | 8.  Total Occupancy * |
|---|---|---|
| MOBILE RANGE UNITS | 4 | 4 |

| | |
|---|---|
| 9.  Housing complies or will comply with the following applicable standards: * | ☒ Local  ☒ State  ☒ Federal |

10.  Additional Housing Information.  *(If no additional information, enter "**NONE**" below) *
Mobile units will travel with the workers to various range locations through Kern County California.

Four sheep camp units with the capacity of one per unit. Total housing is four. The housing is available and sufficient to accommodate the workers being requested.

| | |
|---|---|
| 11.  Is a completed **Addendum B** providing additional information on housing that will be provided to workers attached to this job order? * | ☐ Yes  ☒ No |

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



## E. Provision of Meals

1. Describe **how** the employer will provide each worker with 3 meals a day or furnish free and convenient cooking and kitchen facilities. * *(Please begin response on this form and use Addendum C if additional space is needed.)*

Housing contains free and convenient cooking facilities and employer will provide three prepared meals a day or adequate food, free of charge, based on the requisition by worker, for workers to prepare their own meals while in camp or on the range. Employer may at times provide prepared meals for workers consumption. Employer will provide worker a minimum of 4.5 gallons of potable water per day per worker for drinking and cooking purposes. Additional clean water will be provided to meet the workers laundry and bathing needs.

| 2. If meals are provided, the employer: * | ☒ **WILL NOT** charge workers for such meals. | |
|---|---|---|
| | ☐ **WILL** charge workers for such meals at | $ _____ . ____ per day per worker. |

## F. Transportation and Daily Subsistence

1. Describe the terms and arrangement for daily transportation the employer will provide to workers. *
*(Please begin response on this form and use Addendum C if additional space is needed.)*

Workers are on the range 50% or more of the time, therefore daily transportation is not needed. For the period of time the worker is off the range, transportation is provided by the employer.

2. Describe the terms and arrangements for providing workers with transportation (a) to the place of employment (i.e., inbound) and (b) from the place of employment (i.e., outbound). *
*(Please begin response on this form and use Addendum C if additional space is needed.)*

Transportation from point of recruitment to worksite and from the worksite back to the point of recruitment will be arranged and provided by Employer. Employer will reimburse worker for subsistence costs during travel to worksite no later than the end of the first pay period and from the worksite at the end of the job based on rates established in the applicable regulations.

| 3. During the travel described in Item 2, the employer will pay for or reimburse daily meals by providing each worker * | a. no less than | $ 13 . 17 | per day * |
|---|---|---|---|
| | b. no more than | $ 55 . 00 | per day with receipts |

**Form ETA-790A**      **FOR DEPARTMENT OF LABOR USE ONLY**      Page 3 of 8

H-2A Case Number: H-300-21196-465157    Case Status: Full Certification    Determination Date: 07/20/2021    Validity Period: _____ to _____

OMB Approval: 1205-0466
Expiration Date: 8/31/2022

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



**G.  Referral and Hiring Instructions**

1.  Explain <u>how</u> prospective applicants may be considered for employment under this job order, including verifiable contact information for the employer, or the employer's authorized hiring representative, methods of contact, and the days and hours applicants will be considered for the job opportunity. *
    *(Please begin response on this form and use Addendum C if additional space is needed.)*

Open Job Order, please contact Local State Employment office. The employment office will refer each applicant to Western Range Association. Western Range Association will conduct a full telephone interview with the applicant. The office hours for Western Range Association are Monday - Friday from 8:00 a.m. to 4:30 p.m., Mountain Standard time 208-595-2226 ext. 115. All employers must continue to be open to any qualified U.S worker regardless of race, color, national origin, age, sex, religion, handicap, or citizenship. No strike requirements - The worksite does not currently have workers on strike or being locked out in the course of a labor dispute.
Western Range Association and its rancher members adopt the public policy considerations of the California Drug Free Workplace Act (CA Gov. Code  8355) as well as its federal counterpart. Western Range maintains a strong commitment to providing a safe, efficient, and productive work environment. H-2A employee involvement with alcohol and drugs could be extremely dangerous to the employee himself, to all other employees, the general public and third parties, and it is disruptive to the workplace. H-2A herders provide the primary care for hundreds of animals and are presumed to be in safety and security sensitive positions. While Western Range recognizes that it is neither a California government employer nor a California government contractor, it nonetheless adopts certain policies and procedures applicable to government workers as set forth herein. Any person who is on duty or on standby who is found to use, possess, or be under the influence of illegal or unauthorized drugs or other illegal mind-altering substances or who uses or is under the influence of alcohol to any extent that would impede his ability to perform his or her duties safely and effectively will be terminated. Manufacture, distribution or possession of an illegal drug, or misuse of a prescription drug is also cause for termination. Applicants who are to be employed in the sensitive positions stated above, may be subject to pre-employment and reasonable cause drug and alcohol testing (substance testing) at the employer's expense.

| 2.  Telephone Number to Apply * | 3.  Email Address to Apply * |
|---|---|
| +1 (208) 595-2226 | applicants@westernrange.net |

| 4.  Website address (URL) to Apply * |
|---|
| N/A |

**H.  Additional Material Terms and Conditions of the Job Offer**

| 1.  Is a completed **Addendum C** providing additional information about the material terms, conditions, and benefits (monetary and non-monetary) that will be provided by the employer attached to this job order? * | ☑ Yes  ☐ No |
|---|---|

H-2A Case Number:  H-300-21196-465157          Case Status:  Full Certification          Determination Date:  07/20/2021          Validity Period: _____ to _____



H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**

## I.  Conditions of Employment and Assurances for H-2A Agricultural Clearance Orders

By virtue of my signature below, I **HEREBY CERTIFY** my knowledge of and compliance with applicable Federal, State, and local employment-related laws and regulations, including employment-related health and safety laws, and certify the following conditions of employment:

1.  **JOB OPPORTUNITY**:  Employer assures that the job opportunity identified in this clearance order (hereinafter also referred to as the "job order") is a full-time temporary position being placed with the SWA in connection with an H-2A *Application for Temporary Employment Certification* for H-2A workers and this clearance order satisfies the requirements for agricultural clearance orders in 20 CFR 653, subpart F and the requirements set forth in 20 CFR 655.122.  This job opportunity offers U.S. workers no less than the same benefits, wages, and working conditions that the employer is offering, intends to offer, or will provide to H-2A workers and complies with the requirements at 20 CFR 655, Subpart B.  The job opportunity is open to any qualified U.S. worker regardless of race, color, national origin, age, sex, religion, handicap, or citizenship.

2.  **NO STRIKE, LOCKOUT, OR WORK STOPPAGE**:  Employer assures that this job opportunity, including all worksites for which the employer is requesting H-2A labor certification does not currently have workers on strike or being locked out in the course of a labor dispute.  20 CFR 655.135(b).

3.  **HOUSING FOR WORKERS**:  Employer agrees to provide for or secure housing for H-2A workers and those workers in corresponding employment who are not reasonably able to return to their residence at the end of the work day.  That housing complies with the applicable local, State, or Federal standards and is sufficient to house the specified number of workers requested through the clearance system.  The employer will provide the housing without charge to the worker.  Any charges for rental housing will be paid directly by the employer to the owner or operator of the housing.  If public accommodations are provided to workers, the employer agrees to pay all housing-related charges directly to the housing's management.  The employer agrees that charges in the form of deposits for bedding or other similar incidentals related to housing (e.g., utilities) must not be levied upon workers.  However, the employer may require workers to reimburse them for damage caused to housing by the individual worker(s) found to have been responsible for damage which is not the result of normal wear and tear related to habitation.  When it is the prevailing practice in the area of intended employment and the occupation to provide family housing, the employer agrees to provide family housing at no cost to workers with families who request it. 20 CFR 655.122(d), 653.501(c)(3)(vi).

    *Request for Conditional Access to Intrastate or Interstate Clearance System*:  Employer assures that the housing disclosed on this clearance order will be in full compliance with all applicable local, State, or Federal standards at least 20 calendar days before the housing is to be occupied. 20 CFR 653.502(a)(3).  The Certifying Officer will not certify the application until the housing has been inspected and approved.

4.  **WORKERS' COMPENSATION COVERAGE**:  Employer agrees to provide workers' compensation insurance coverage in compliance with State law covering injury and disease arising out of and in the course of the worker's employment.  If the type of employment for which the certification is sought is not covered by or is exempt from the State's workers' compensation law, the employer agrees to provide, at no cost to the worker, insurance covering injury and disease arising out of and in the course of the worker's employment that will provide benefits at least equal to those provided under the State workers' compensation law for other comparable employment.  20 CFR 655.122(e).

5.  **EMPLOYER-PROVIDED TOOLS AND EQUIPMENT**:  Employer agrees to provide to the worker, without charge or deposit charge, all tools, supplies, and equipment required to perform the duties assigned.  20 CFR 655.122(f).

6.  **MEALS**:  Employer agrees to provide each worker with three meals a day or furnish free and convenient cooking and kitchen facilities to the workers that will enable the workers to prepare their own meals.  Where the employer provides the meals, the job offer will state the charge, if any, to the worker for such meals.  The amount of meal charges is governed by 20 CFR 655.173. 20 CFR 655.122(g).

    For workers engaged in the herding or production of livestock on the range, the employer agrees to provide each worker, without charge or deposit charge, (1) either three sufficient meals a day, or free and convenient cooking facilities and adequate provision of food to enable the worker to prepare his own meals.  To be sufficient or adequate, the meals or food provided must include a daily source of protein, vitamins, and minerals; and (2) adequate potable water, or water that can be easily rendered potable and the means to do so.  20 CFR 655.210(e).

7.  **TRANSPORTATION AND DAILY SUBSISTENCE**:  Employer agrees to provide the following transportation and daily subsistence benefits to eligible workers.

    A.  *Transportation to Place of Employment (Inbound)*

        If the worker completes 50 percent of the work contract period, and the employer did not directly provide such transportation or subsistence or otherwise has not yet paid the worker for such transportation or subsistence costs, the employer agrees to reimburse the worker for reasonable costs incurred by the worker for transportation and daily subsistence from the place from which the worker has come to work for the employer, whether in the U.S. or abroad to the place of employment.  The amount of the transportation payment must be no less (and is not required to be more) than the most economical and reasonable common carrier transportation charges for the distances involved.  The amount the employer will pay for daily subsistence expenses are those amounts disclosed in this clearance order, which are at least as much as the employer would charge the worker for providing the worker with three meals a day during employment (if applicable), but in no event will it be less than the amount permitted under 20 CFR 655.173(a).  The employer understands that the Fair Labor Standards Act applies independently of the H-2A requirements and imposes obligations on employers regarding payment of wages. 20 CFR 655.122(h)(1).

    B.  *Transportation from Place of Employment (Outbound)*

        If the worker completes the work contract period, or is terminated without cause, and the worker has no immediate subsequent H-2A employment, the employer agrees to provide or pay for the worker's transportation and daily subsistence from the place of employment to the place from which the worker, disregarding intervening employment, departed to work for the employer.  Return transportation will not be provided to workers who voluntarily abandon employment before the end of the work contract period, or who are terminated for cause, if the employer follows the notification requirements in 20 CFR 655.122(n).

**Form ETA-790A**                **FOR DEPARTMENT OF LABOR USE ONLY**                Page 5 of 8

H-2A Case Number: H-300-21196-465157   Case Status: Full Certification   Determination Date: 07/20/2021   Validity Period: _____ to _____

If the worker has contracted with a subsequent employer who has not agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the worker's worksite to such subsequent employer's worksite, the employer must provide for such expenses.  If the worker has contracted with a subsequent employer who has agreed in such work contract to provide or pay for the worker's transportation and daily subsistence expenses from the employer's worksite to such subsequent employer's worksite, the subsequent employer must provide or pay for such expenses.

The employer is not relieved of its obligation to provide or pay for return transportation and subsistence if an H-2A worker is displaced as a result of the employer's compliance with the 50 percent rule as described in sec. 655.135(d) of this subpart with respect to the referrals made after the employer's date of need. 20 CFR 655.122(h)(2).

C.   *Daily Transportation*

Employer agrees to provide transportation between housing provided or secured by the employer and the employer's worksite(s) at no cost to the worker. 20 CFR 655.122(h)(3).

D.   *Compliance with Transportation Standards*

Employer assures that all employer-provided transportation will comply with all applicable Federal, State, or local laws and regulations. Employer agrees to provide, at a minimum, the same transportation safety standards, driver licensure, and vehicle insurance as required under 29 U.S.C. 1841 and 29 CFR 500.105 and 29 CFR 500.120 to 500.128.  If workers' compensation is used to cover transportation, in lieu of vehicle insurance, the employer will ensure that such workers' compensation covers all travel or that vehicle insurance exists to provide coverage for travel not covered by workers' compensation.  Employer agrees to have property damage insurance. 20 CFR 655.122(h)(4).

8.   **THREE-FOURTHS GUARANTEE**:  Employer agrees to offer the worker employment for a total number of work hours equal to at least three-fourths of the workdays of the total period beginning with the first workday after the arrival of the worker at the place of employment or the advertised contractual first date of need, whichever is later, and ending on the expiration date specified in the work contract or in its extensions, if any.  20 CFR 655.122(i).

The employer may offer the worker more than the specified hours of work on a single workday.  For purposes of meeting the three-fourths guarantee, the worker will not be required to work for more than the number of hours specified in the job order for a workday, or on the worker's Sabbath or Federal holidays.  If, during the total work contract period, the employer affords the U.S. or H-2A worker less employment than that required under this guarantee, the employer will pay such worker the amount the worker would have earned had the worker, in fact, worked for the guaranteed number of days.  An employer will not be considered to have met the work guarantee if the employer has merely offered work on three-fourths of the workdays if each workday did not consist of a full number of hours of work time as specified in the job order.  All hours of work actually performed may be counted by the employer in calculating whether the period of guaranteed employment has been met.  Any hours the worker fails to work, up to a maximum of the number of hours specified in the job order for a workday, when the worker has been offered an opportunity to work, and all hours of work actually performed (including voluntary work over 8 hours in a workday or on the worker's Sabbath or Federal holidays), may be counted by the employer in calculating whether the period of guaranteed employment has been met. 20 CFR 655.122(i).

If the worker is paid on a piece rate basis, the employer agrees to use the worker's average hourly piece rate earnings or the required hourly wage rate, whichever is higher, to calculate the amount due under the three-fourths guarantee.  20 CFR 655.122(i).

If the worker voluntarily abandons employment before the end of the period of employment set forth in the job order, or is terminated for cause, and the employer follows the notification requirements in 20 CFR 655.122(n), the worker is not entitled to the three-fourths guarantee.  The employer is not liable for payment of the three-fourths guarantee to an H-2A worker whom the Department of Labor certifies is displaced due to the employer's requirement to hire qualified and available U.S. workers during the recruitment period set out in 20 CPR 655.135(d), which lasts until 50 percent of the period of the work contract has elapsed (50 percent rule).  20 CFR 655.122(i).

*Important Note*:  In circumstances where the work contract is terminated due to contract impossibility under 20 CFR 655.122(o), the three-fourths guarantee period ends on the date of termination.

9.   **EARNINGS RECORDS**:  Employer agrees to keep accurate and adequate records with respect to the workers' earnings at the place or places of employment, or at one or more established central recordkeeping offices where such records are customarily maintained.  All records must be available for inspection and transcription by the Department of Labor or a duly authorized and designated representative, and by the worker and representatives designated by the worker as evidenced by appropriate documentation.  Where the records are maintained at a central recordkeeping office, other than in the place or places of employment, such records must be made available for inspection and copying within 72 hours following notice from the Department of Labor, or a duly authorized and designated representative, and by the worker and designated representatives.  The content of earnings records must meet all regulatory requirements and be retained by the employer for a period of not less than 3 years after the date of certification by the Department of Labor. 20 CFR 655.122(j).

10.   **HOURS AND EARNINGS STATEMENTS**:  Employer agrees to furnish to the worker on or before each payday in one or more written statements the following information: (1) the worker's total earnings for the pay period; (2) the worker's hourly rate and/or piece rate of pay; (3) the hours of employment offered to the worker (showing offers in accordance with the three-fourths guarantee as determined in 20 CFR 655.122(i), separate from any hours offered over and above the guarantee); (4) the hours actually worked by the worker; (5) an itemization of all deductions made from the worker's wages; (6) If piece rates are used, the units produced daily; (7) beginning and ending dates of the pay period; and (8) the employer's name, address and FEIN.  20 CFR 655.122(k).

For workers engaged in the herding or production of livestock on the range, the employer is exempt from recording and furnishing the hours actually worked each day, the time the worker begins and ends each workday, as well as the nature and amount of work performed, but otherwise must comply with the earnings records and hours and earnings statement requirements set out in 20 CFR 655.122(j) and (k). The employer agrees to keep daily records indicating whether the site of the employee's work was on the range or off the range.  If the employer prorates a worker's wage because of the worker's voluntary absence for personal reasons, it must also keep a record of the reason for the worker's absence. 20 CFR 655.210(f).

**Form ETA-790A**                     **FOR DEPARTMENT OF LABOR USE ONLY**                     Page 6 of 8

H-2A Case Number: H-300-21196-465157        Case Status: Full Certification        Determination Date: 07/20/2021        Validity Period: _____ to _____

H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**



11. **RATES OF PAY**: The employer agrees that it will offer, advertise in its recruitment, and pay at least the Adverse Effect Wage Rate (AEWR), the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest. If the worker is paid by the hour, the employer must pay this rate for every hour or portion thereof worked during a pay period. If the offered wage(s) disclosed in this clearance order is/are based on commission, bonuses, or other incentives, the employer guarantees the wage paid on a weekly, semi-monthly, or monthly basis will equal or exceed the AEWR, prevailing hourly wage or piece rate, the legal Federal or State minimum wage, or any agreed-upon collective bargaining rate, whichever is highest.

If the worker is paid on a piece rate basis and at the end of the pay period the piece rate does not result in average hourly piece rate earnings during the pay period at least equal to the amount the worker would have earned had the worker been paid at the appropriate hourly rate of pay, the employer agrees to supplement the worker's pay at that time so that the worker's earnings are at least as much as the worker would have earned during the pay period if the worker had instead been paid at the appropriate hourly wage rate for each hour worked. 20 CFR 655.120, 655.122(l).

For workers engaged in the herding or production of livestock on the range, the employer agrees to pay the worker at least the monthly AEWR, the agreed-upon collective bargaining wage, or the applicable minimum wage imposed by Federal or State law or judicial action, in effect at the time work is performed, whichever is highest, for every month of the job order period or portion thereof. If the offered wage disclosed in this clearance order is based on-commissions, bonuses, or other incentives, the employer assures that the wage paid will equal or exceed the monthly AEWR, the agreed-upon collective bargaining wage, or the applicable minimum wage imposed by Federal or State law or judicial action, whichever is highest, and will be paid to each worker free and clear without any unauthorized deductions. The employer may prorate the wage for the initial and final pay periods of the job order period if its pay period does not match the beginning or ending dates of the job order. The employer also may prorate the wage if an employee is voluntarily unavailable to work for personal reasons. 20 CFR 655.210(g).

12. **FREQUENCY OF PAY**: Employer agrees to pay workers when due based on the frequency disclosed in this clearance order. 20 CFR 655.122(m).

13. **ABANDONMENT OF EMPLOYMENT OR TERMINATION FOR CAUSE**: If a worker voluntarily abandons employment before the end of the contract period, or is terminated for cause, employer is not responsible for providing or paying for the subsequent transportation and subsistence expenses of that worker, and that worker is not entitled to the three-fourths guarantee, if the employer notifies the Department of Labor and, if applicable, the Department of Homeland Security, in writing or by any other method specified by the Department of Labor or the Department of Homeland Security in the Federal Register, not later than 2 working days after the abandonment or termination occurs. A worker will be deemed to have abandoned the work contract if the worker fails to show up for work at the regularly scheduled time and place for 5 consecutive work days without the consent of the employer. 20 CFR 655.122(n).

14. **CONTRACT IMPOSSIBILITY**: The work contract may be terminated before the end date of work specified in the work contract if the services of the workers are no longer required for reasons beyond the control of the employer due to fire, weather, or other Act of God that makes fulfillment of the contract impossible, as determined by the U.S. Department of Labor. In the event that the work contract is terminated, the employer agrees to fulfill the three-fourths guarantee for the time that has elapsed from the start date of work specified in the work contract to the date of termination. The employer also agrees that it will make efforts to transfer the worker to other comparable employment acceptable to the worker and consistent with existing immigration laws. In situations where a transfer is not affected, the employer agrees to return the worker at the employer's expense to the place from which the worker, disregarding intervening employment, came to work for the employer, or transport the worker to his/her next certified H-2A employer, whichever the worker prefers. The employer will also reimburse the worker the full amount of any deductions made by the employer from the worker's pay for transportation and subsistence expenses to the place of employment. The employer will also pay the worker for any transportation and subsistence expenses incurred by the worker to that employer's place of employment. The amounts the employer will pay for subsistence expenses per day are those amounts disclosed in this clearance order. The amount of the transportation payment must not be less (and is not required to be more) than the most economical and reasonable common carrier transportation charges for the distances involved. 20 CFR 655.122(o).

The employer is not required to pay for transportation and daily subsistence from the place of employment to a subsequent employer's worksite if the worker has contracted with a subsequent employer who has agreed to provide or pay for the worker's transportation and subsistence expenses from the present employer's worksite to the subsequent employer's worksite. 20 CFR 655.122(h)(2).

15. **DEDUCTIONS FROM WORKER'S PAY**: Employer agrees to make all deductions from the worker's paycheck required by law. This job offer discloses all deductions not required by law which the employer will make from the worker's paycheck and all such deductions are reasonable, in accordance with 20 CFR 655.122(p) and 29 CFR part 531. The wage requirements of 20 CFR 655.120 will not be met where undisclosed or unauthorized deductions, rebates, or refunds reduce the wage payment made to the employee below the minimum amounts required under 20 CFR part 655, subpart B, or where the employee fails to receive such amounts free and clear because the employee kicks back directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. 20 CFR 655.122(p).

16. **DISCLOSURE OF WORK CONTRACT**: Employer agrees to provide a copy of the work contract to an H-2A worker no later than the time at which the worker applies for the visa, or to a worker in corresponding employment no later than on the day work commences. For an H-2A worker coming to the employer from another H-2A employer, the employer agrees to provide a copy of the work contract no later than the time an offer of employment is made to the H-2A worker. A copy of the work contract will be provided to each worker in a language understood by the worker, as necessary or reasonable. In the absence of a separate, written work contract entered into between the employer and the worker, the required terms of this clearance order, including all Addendums, and the certified *H-2A Application for Temporary Employment Certification* will be the work contract. 20 CFR 655.122(q).

Form ETA-790A                                    **FOR DEPARTMENT OF LABOR USE ONLY**                                    Page 7 of 8

H-2A Case Number: H-300-21196-465157   Case Status: Full Certification   Determination Date: 07/20/2021   Validity Period: _____ to _____

OMB Approval: 1205-0466
Expiration Date: 8/31/2022



H-2A Agricultural Clearance Order
Form ETA-790A
**U.S. Department of Labor**

17. **ADDITIONAL ASSURANCES FOR CLEARANCE ORDERS**:

A. Employer agrees to provide to workers referred through the clearance system the number of hours of work disclosed in this clearance order for the week beginning with the anticipated date of need, unless the employer has amended the date of need at least 10 business days before the original date of need by so notifying the Order-Holding Office (OHO) in writing (e.g., e-mail notification). The employer understands that it is the responsibility of the SWA to make a record of all notifications and attempt to inform referred workers of the amended date of need expeditiously. 20 CFR 653.501(c)(3)(i).

If there is a change to the anticipated date of need, and the employer fails to notify the OHO at least 10 business days before the original date of need, the employer agrees that it will pay eligible workers referred through the clearance system the specified rate of pay disclosed in this clearance order for the first week starting with the originally anticipated date of need or will provide alternative work if such alternative work is stated on the clearance order. 20 CFR 653.501(c)(5).

B. Employer agrees that no extension of employment beyond the period of employment specified in the clearance order will relieve it from paying the wages already earned, or if specified in the clearance order as a term of employment, providing transportation from the place of employment, as described in paragraph 7.B above. 20 CFR 653.501(c)(3)(ii).

C. Employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration, and other employment-related laws. 20 CFR 653.501(c)(3)(iii).

D. Employer agrees to expeditiously notify the OHO or SWA by emailing and telephoning immediately upon learning that a crop is maturing earlier or later, or that weather conditions, over-recruitment, or other factors have changed the terms and conditions of employment. 20 CFR 653.501(c)(3)(iv).

E. If acting as a farm labor contractor (FLC) or farm labor contractor employee (FLCE) on this clearance order, the employer assures that it has a valid Federal FLC certificate or Federal FLCE identification card and when appropriate, any required State FLC certificate. 20 CFR 653.501(c)(3)(v).

F. Employer assures that outreach workers will have reasonable access to the workers in the conduct of outreach activities pursuant to 20 CFR 653.107. 20 CFR 653.501(c)(3)(vii).

*I declare under penalty of perjury that I have read and reviewed this clearance order, including every page of this Form ETA-790A and all supporting addendums, and that to the best of my knowledge, the information contained therein is true and accurate. This clearance order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. 20 CFR 653.501(c)(3)(viii). I understand that to knowingly furnish materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a federal offense punishable by fines, imprisonment, or both. 18 U.S.C. 2, 1001.*

| 1. Last (family) name *  YOUREE | 2. First (given) name *  MONICA | 3. Middle initial § |
|---|---|---|
| 4. Title *  EXECUTIVE DIRECTOR | | |
| 5. Signature  (or digital signature) *  Digital Signature Verified and Retained By   *Certifying Officer* | | 6. Date signed *  7/16/2021 |

**Employment Service Statement**

In view of the statutorily established basic function of the Employment Service (ES) as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the Department of Labor's Employment and Training Administration (ETA) nor the SWAs are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the ES constitute a contractual job offer to which the ETA or a SWA is in any way a party. 20 CFR 653.501(c)(1)(i).

**Public Burden Statement** *(1205-0466)*

Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. Public reporting burden for this collection of information is estimated to average .63 hours per response for all information collection requirements, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing, reviewing, and submitting the collection of information. The obligation to respond to this data collection is required to obtain/retain benefits (44 U.S.C. 3501, Immigration and Nationality Act, 8 U.S.C. 1101, et seq.). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Employment and Training Administration, Office of Foreign Labor Certification, 200 Constitution Ave., NW, Suite PPII 12-200, Washington, DC, 20210. (Paperwork Reduction Project OMB 1205-0466). DO NOT send the completed application to this address.

| Form ETA-790A | **FOR DEPARTMENT OF LABOR USE ONLY** | Page 8 of 8 |
|---|---|---|

H-2A Case Number: H-300-21196-465157    Case Status: Full Certification    Determination Date: 07/20/2021    Validity Period: _____ to _____

OMB Approval: 1205-0466
Expiration Date: 8/31/2022

H-2A Agricultural Clearance Order
Form ETA-790A Addendum B
**U.S. Department of Labor**



## C. Additional Place of Employment Information

| 1. Name of Agricultural Business § | 2. Place of Employment * | 3. Additional Place of Employment Information § | 4. Begin Date § | 5. End Date § | 6. Total Workers § |
|---|---|---|---|---|---|
| JOE S. ESNOZ | 24351 HWY 46. ON HWY 46 1 1/2 MLS WEST OF WASCO APPRX 13 MLS W OF WASC LOST HILLS, California 93249 | | 10/1/2021 | 12/31/2021 | 1 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Page B.1 of B.1

| Form ETA-790A Addendum B | FOR DEPARTMENT OF LABOR USE ONLY | | |
|---|---|---|---|
| H-2A Case Number: H-300-21196-465157 | Case Status: Full Certification | Determination Date: 07/20/2021 | Validity Period: _____ to _____ |

OMB Approval: 1205-0466
Expiration Date: 8/31/2022



H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**

---

## H. Additional Material Terms and Conditions of the Job Offer

a. Job Offer Information 1

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Workers must have at least 3 months of experience birthing livestock with herds of 200 head or larger on the open range or pasture. One reference required.
May assist in lambing, docking, and shearing. The following seasonal duties will need to be performed. Herder will need to move pregnant ewes to lambing grounds. Be able to identify signs of ewes going into labor and identify potential problems during the labor process. Know how and when to assist during difficult births. Be able to properly constrain ewes for difficult births and able to graft orphan lambs to mothers. Ability to identify herd health issues including but not limited to malnutrition of ewes and lambs, prolapse and mastitis. Provide water to animals, including minor maintenance of water troughs and water lines. May need to haul water in truck to supplement animal water needs. May need to provide supplement feed for the ewes and lambs if the range has insufficient forage. Disperse livestock on the range to reduce overcrowding and increase the success of mother and lamb bonding. Protect vulnerable livestock (lambs & ewes in labor) from predators. Move Ewes and lambs and assist in branding, castrating, vaccinating, tagging, and worming. Ability to safely catch lambs with a hook. Move ewes and lambs to summer range grounds.

Some work/tasks may occur off the range, but more than 50% of work will be performed on the range. Western Range Association and its member ranches facilitate practices of good animal husbandry. Employees that are found abusing, neglecting or abandoning livestock entrusted to their care may be terminated for cause. If the negligent/abusive actions of an employee result in the loss/death of livestock/animals or cause harm to another person, the employee may be held accountable for these actions.
The worker will live in the employer provided range housing. Said housing will be clean and in good repair at the time it is provided to the employee. The employee is responsible to maintain the housing unit in a reasonable level of cleanliness in order to avoid flies, mice or other vermin. The employee is responsible to alert the employer of damage to the housing unit within a reasonable amount of time. The employee may be held accountable for damage to the housing unit that is the result of negligence on the part of the employee (normal wear and tear excepted).
***Hours worked footnote: On call for up to 24 hours 7 days a week***

---

b. Job Offer Information 2

| 1. Section/Item Number * | F.2 | 2. Name of Section or Category of Material Term or Condition * | Inbound/Outbound Transportation - undefined |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Incoming transportation and advanced/paid on behalf of a worker before 50% completion of the work contract may be deducted from the worker's pay in accordance with applicable state regulations if the worker does not complete 50% of the contract. When a longer-term contract is negotiated with a U.S. or H-2A worker, the employer is not relieved of the responsibility for reimbursement to the worker for travel and subsistence expenses incurred in getting to the job site which were advanced by the employer and subsequently withheld form the worker's pay until 50% of the original contract period elapsed. These payments will made to the U.S. and H-2A workers at the 50% completion point of the original period of employment. The employer is responsible for return transportation and subsistence expenses if the U.S. and H-2A worker successfully fulfills his/her obligations under the original terms of employment for less than 1 year. However, such payment does not actually have to be made to the U.S and H-2A worker until the worker and the employer sever their employer/employee relationship, which will occur at the point in time subsequent to the end of the original period of employment when a longer-term contract is negotiated. Successful completion of the original contract or job order entitles the worker to return transportation and subsistence regardless of performance under renewal or extended contract.

Page C.1 of C.2

---

Form ETA-790A Addendum C                                    **FOR DEPARTMENT OF LABOR USE ONLY**

H-2A Case Number: H-300-21196-465157        Case Status: Full Certification        Determination Date: 07/20/2021        Validity Period: _____ to _____

OMB Approval: 1205-0466
Expiration Date: 8/31/2022

H-2A Agricultural Clearance Order
Form ETA-790A Addendum C
**U.S. Department of Labor**



## H. Additional Material Terms and Conditions of the Job Offer

c. Job Offer Information 3

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - undefined |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

Los trabajadores deben tener al menos 3 meses de experiencia dando a luz al ganado con rebaos de 200 cabezas o ms en el campo abierto o en el pasto. Se requiere una referencia. Puede ayudar en el parto, atraque y esquila. Se debern realizar los siguientes deberes estacionales. El pastor necesitar mover las ovejas preadas a los terrenos de parto. Ser capaz de identificar signos de ovejas en el parto e identificar posibles problemas durante el proceso de parto. Sepa cmo y cundo ayudar durante los partos dfciles. Poder restringir adecuadamente a las ovejas para partos dfciles y poder injertar corderos hurfanos a las madres. Capacidad para identificar problemas de salud del rebao, que incluyen, entre otros, desnutricin de ovejas y corderos, prolapso y mastitis. Proporcione agua a los animales, incluido el mantenimiento menor de canales de agua y tuberas de agua. Puede necesitar transportar agua en un camin para complementar las necesidades de agua de los animales. Es posible que deba proporcionar alimento suplementario para las ovejas y los corderos si el rango no tiene suficiente forraje. Disperse el ganado en el rango para reducir el hacinamiento y aumentar el xito de la unin de la madre y el cordero. Proteja al ganado vulnerable (corderos y ovejas en trabajo de parto) de los depredadores. Mueve ovejas y corderos y ayuda a marcar, castrar, vacunar, etiquetar y desparasitar. Capacidad para atrapar corderos con seguridad con un anzuelo. Mueva las ovejas y los corderos a los terrenos de verano.

Algunos trabajos / tareas pueden ocurrir fuera del rango, pero ms del 50% del trabajo se realizar en el rango. Western Range Association y sus ranchos miembros facilitan las prcticas de buena cra de animales. Los empleados que se encuentren abusando, descuidando o abandonando ganado confiado a su cuidado pueden ser despedidos por causa. Si las acciones negligentes / abusivas de un empleado resultan en la prdida / muerte de ganado / animales o causan dao a otra persona, el empleado puede ser responsable de estas acciones. El trabajador vivir en la vivienda provista por el empleador. Dicha vivienda estar limpia y en buen estado en el momento en que se la proporcione al empleado. El empleado es responsable de mantener la unidad de vivienda en un nivel razonable de limpieza para evitar moscas, ratones u otras alimaas. El empleado es responsable de alertar al empleador de daos a la unidad de vivienda dentro de un perodo de tiempo razonable. Se puede responsabilizar al empleado por daos a la unidad de vivienda que sean resultado de negligencia por parte del empleado (excepto el desgaste normal).
**** Nota de pie de pgina sobre horas trabajadas: hasta 24 horas los 7 das de la semana.****

d. Job Offer Information 4

| 1. Section/Item Number * | A.8a | 2. Name of Section or Category of Material Term or Condition * | Job Duties - undefined |
|---|---|---|---|

3. Details of Material Term or Condition (*up to 3,500 characters*) *

ELECTRONIC COMMUNICATION
Cell phones, along with sufficient minutes of use for communication, are provided, without charge or deposit, to workers during the entire period of employment. Each worker is visited daily.

EMPLOYER PROVIDED ITEMS
Supplies and Equipment, includes dogs, shovel, sleeping bag, rain gear, rain boots, sheep hook, and gloves. In addition to these items, the worker (s) Is provided others tools, supplies, and equipment, as required by law, and to work safely and effectively. The tools, supplies, and equipment that are provided to the workers are provided without charge or deposit.

Page C.2 of C.2

**FOR DEPARTMENT OF LABOR USE ONLY**

H-2A Case Number: H-300-21196-465157     Case Status: Full Certification     Determination Date: 07/20/2021     Validity Period: _____ to _____

EXHIBIT C

PRE-CONTRATO DE TRABAJO PARA PASTORES DE OVEJAS

Este contrato de pastor de ovejas con fecha **06** de **Settiembre** del **2021** celebran de una parte **Joe S. Baez** miembro de WESTERN RANGE ASSOCIATION que en lo sucesivo será denominado "Empleador"; y de otra parte **Jose Antonio Aliaga Aguero** que en lo sucesivo será denominado "Empleado".

## TÉRMINO DE EMPLEO

A través de este medio El Empleador contrata a El Empleado, a su vez El Empleado acepta el trabajo como pastor de ovejas de El Empleador o de cualquier otro Empleador que sea miembro de la Asociación y que sea designado por la Western Range Association por un período, comenzando el día en que el Empleado comience a trabajar en el lugar de su empleo en los Estados Unidos de América hasta **31 DIC-2021**, Sin embargo, el plazo de permanencia en los EEUU dado inicialmente no puede exceder los 364 días calendario así como cualquier extensión (s) de permanencia autorizada. Este contrato tiene un período total no mayor de tres (3) años y el plazo y las prórrogas están condicionados a la renovación de la certificación H2A por El Departamento de Trabajo de los Estados Unidos (DOL), el Departamento de Seguridad Nacional de los Estados Unidos (DHS) y que estén de acuerdo el Empleador y el Empleado. En caso de que no se obtenga la renovación de la certificación, este contrato se interpretará como un término de empleo igual que al término de la última certificación del DOL y la fecha de vencimiento del formulario Visa / I-94. Este Acuerdo sólo es válido junto con una certificación válida.

## DESCRIPCIÓN DEL TRABAJO

El Empleado debe tener, de preferencia, experiencia en pastoreo de ovinos seis (6) meses o más.

Lo siguiente describe los deberes de un pastor de ovinos. Si bien se pretende que sea lo más inclusivo posible, puede también no serlo ya que podría haber trabajos adicionales en el rancho estrechamente o directamente relacionados con la producción y la cría de ovejas en forma temporal.

· El Empleado es contratado como un pastor de ovejas o de cabras tal como se define en 20 CFR '655.

· El Empleado debe vivir en un lugar designado por el Empleador y deberá realizar cualquiera o todas las tareas de pastoreo que le sea asignado por el Empleador de acuerdo con la descripción del trabajo de pastor de ovejas con visa H2A y todas las leyes Estatales y Federales aplicables.

· El Empleado deberá estar al llamado las 24 horas al día, los 7 días de la semana.

· Se requiere que el Empleado atienda al rebaño de ovejas en el campo o en pasturas, guíe y reúna al rebaño utilizando a los perros entrenados, caballos y/o equipo según lo proporcionado por el Empleador.

· El Empleado debe dormir cerca al rebaño de ovinos en la zona de acampado nocturno para proteger al rebaño de animales depredadores así como evitar que coman plantas venenosas.

· El Empleado debe bañar a las ovejas; en el curso normal, examinará a los animales para detectar signos de enfermedad.En algunos casos se le solicitará al Empleado administrar vacunas, medicamentos e insecticidas según indicación del Empleador.

· Se puede requerir que el Empleado lleve comida y agua al rebaño, a los campamentos cercanos ya otros Empleados que se encuentren realizando labores de pastoreo de ovejas.

· Se puede requerir que el empleado asista en la parición.

· Se puede requerir que el Empleado traslade y acomode al rebaño, esquile y realice otras labores de granja o rancho relacionadas con la producción y crianza de ovinos de manera eventual.

· El tamaño del rebaño a cuidar es generalmente, pero no limitado, de 800-1200 ovinos.

· Se puede requerir que el Empleado asista a las ovejas y corderos durante la temporada de parición en galpones cerrados (ayudar en el parto), marcación (etiquetar o marcar de otra manera a las ovejas para propósitos de identificación), clasificación de las ovejas, cortado de las pezuñas y alimentar a los animales con raciones suplementarias.

· El Empleado puede ser capaz de cabalgar y manejar caballos de una manera que asegure su persona, a sus compañeros de trabajo y a los animales.

· El Empleado debe estar dispuesto a realizar tareas de manera competente y eficiente sin necesidad de supervisión. Debe ser capaz de vivir y trabajar individualmente o en pequeños grupos, en áreas aisladas por períodos prolongados de tiempo.

1



• Es posible que se requiera que el Empleado trabaje alrededor de la maquinaria agrícola relacionada al traslado de las ovinas periódicamente y para alimentarlas. El Empleado no estará obligado a operar o reparar el equipo pesado.
• El Empleado puede ser requerido ocasionalmente para realizar reparaciones menores de cercos, corrales, si está relacionado con el pastoreo de las ovinos.

• El Empleado deberá estar preparado para trabajar en el campo y en todo tipo de clima, ya que puede estar expuesto a los peligros de pastoreo como serpientes venenosas y depredadores.

• El Empleado deberá ser capaz de levantar como mínimo 50 lbs. (23 kg), y el manejar podría ser requerido.

## COMPENSACIÓN

Como compensación por el servicio prestado bajo este contrato, el Empleado tendrá derecho a recibir del Empleador un salario mensual total no menor a $ 2311.24 de dinero legal de los Estados Unidos de América por mes, cuyo monto será no menor al "Sueldo Mínimo" de acuerdo al estado correspondiente. El Empleado entiende y acepta que su salario puede variar si es transferido a otro Empleador durante el término de este contrato, pero en ningún caso dicho monto será menor que el "Sueldo Mínimo" del estado correspondiente del nuevo Empleador, de acuerdo a las leyes del Departamento de Labor.

El Empleado recibirá su salario en dos partes cada mes. El día 15 y el último día de cada mes durante el período de empleo, prorrateado para cualquier período parcial de empleo. Como compensación adicional por los servicios prestados bajo este contrato y sin costo para el Empleado, el Empleador deberá proporcionar al Empleado vivienda y pensión (comidas y/o alimentos para ser preparados) de acuerdo con las leyes estatales o federales aplicables.

## VIVIENDA

El Empleador proporcionará vivienda sin costo alguno al Empleado que tenga la visa H2A y a aquellos Empleados que no puedan regresar razonablemente a su vivienda dentro del mismo día.

Los empleados pueden usar una unidad móvil, módulos de vivienda, vivienda móvil u algo similar, también carpas y estructuras estacionarias localizadas a lo largo de los caminos de pastoreo que cumplan con lo siguiente:

• Lugar de Vivienda: Las viviendas deben estar en zonas drenadas y libres de áreas de estancamiento de agua.

• Suministro de agua: Se proporcionará un suministro adecuado y conveniente de agua que cumpla con los estándares del estado o de las autoridades sanitarias y de salud local.

• Disposición de residuos líquidos y excreta: Se proveerán y mantendrán instalaciones, incluyendo palas que serán provistas para la eliminación efectiva de heces y orina de acuerdo con los requerimientos de la autoridad estatal de salud o agencia federal involucrada. Los pozos se utilizan para enterrar dichos componentes, deberán ser cerrados herméticamente a prueba de moscas aún cuando no se llenen completamente después de cada uso. El mantenimiento de pozos de desecho estará de acuerdo con los requisitos estatales y locales de salud y saneamiento.

• Estructura de la vivienda: La vivienda estará estructuralmente en buen estado, en condiciones sanitarias adecuadas y proporcionará refugio a los ocupantes contra los cambios extremos del clima.

• Iluminación: En áreas donde no es factible proporcionar servicio eléctrico a las viviendas, incluyendo carpas, se proveerán linternas y lámparas de kerosene.

• Linternas: Cuando se utilicen linternas, se proporcionarán una por ocupante, incluso a las carpas.

• Baño, lavandería y lavado de manos: Instalaciones de baño, lavandería y lavado de manos se proporcionará cuando no es factible el agua caliente y fría a presión.

• Almacenamiento de alimentos: Cuando no es factible la refrigeración mecánica de los alimentos, el trabajador dispondrá de otro medio para mantener los alimentos frescos y evitar el deterioro, tal como un refrigerador de butano o gas propano. Otros métodos probados para proteger los alimentos frescos, como la deshidratación o poner sal, son aceptables.

• Instalaciones para cocinar y comer: Cuando se permite o se requiere que los trabajadores cocinen en su unidad individual, se proveerá un espacio con iluminación y ventilación adecuada.

• Superficies de la pared: Las superficies de las paredes junto a todas las áreas de preparación y cocción de alimentos serán de material no absorbente y fácil de limpiar. Estas paredes próximas a las áreas de cocción serán de material resistente al fuego.

• Basura y otros desperdicios: Se proporcionarán recipientes duraderos, herméticos y limpios a cada vivienda y carpas para almacenar basura y otros desperdicios.

2

· Control de insectos y roedores: Se proveerán de materiales apropiados, incluyendo sprays, y recipientes sellados para almacenar alimentos para ayudar a los Empleados a combatir insectos, roedores y otros bichos.

· Instalaciones para dormir: Se proporcionará a cada Empleado una cama, catre o litera con colchón cómodo y limpio.

Cargo por Daños: No habrá cargos al Empleado por la ropa de cama u otros utensilios relacionados al alojamiento. El Empleador puede requerir reembolso al Empleado por los daños causados a la vivienda en el cual el Empleado sea responsable de ocasionarlos y que no sea resultado del desgaste normal por el uso.

Vivienda familiar: Se le dará al Empleado una vivienda familiar si es que lo solicita, siempre y cuando el área de empleo sea prevista para proveer una vivienda familiar.

Dispositivos de comunicación: Los teléfonos celulares y/o los teléfonos satelitales y/o las radios inalámbricas y/o acceso a Internet se proporcionarán al Empleado sin costo alguno, y serán para uso de emergencia durante todo el período de empleo. Si hay períodos en los que los dispositivos de comunicación no funcionen eficazmente, el Empleador se comunicará físicamente con el Empleado con una frecuencia no menor de siete (7) días, o según sea necesario para monitorear el bienestar del Empleado.

Certificación de Vivienda Indisponibles: Si la vivienda no está disponible por razones ajenas al control de Empleador, éste deberá sustituirla por una vivienda alquilada o por un alojamiento público que este conforme con los estándares locales, estatales o federales.

## SEGURO EN EL TRABAJO
El Empleador proveerá un seguro de compensación al trabajador de acuerdo con las leyes estatales y federales, que cubran lesiones y enfermedades relacionadas con el trabajo, y que surjan durante el período de empleo del Empleado.

## HERRAMIENTAS Y EQUIPO
El Empleador proveerá al Empleado, sin costo, todas las herramientas, suministros o equipo requerido para desempeñar las funciones asignadas señaladas en este contrato. El Empleado deberá contar con su propia ropa, incluyendo zapatos y botas, artículos de cama y artículos personales, excepto las ya mencionadas anteriormente.

## DEDUCCIONES
El Empleador hará todas las deducciones requeridas por ley del cheque de pago del Empleado. El Empleador puede deducir el costo de los gastos de transporte y subsistencia diaria del Empleado, que fueron solventados directamente por el Empleador. En tales circunstancias, se le reembolsará al Empleado el monto total de dicha retención cuando el Empleado complete el 50% del período del contrato de trabajo.

## TRANSPORTE Y SUBSISTENCIA DIARIA
Transporte al lugar de empleo: Si el Empleador no ha pagado por adelantado los gastos de transporte y subsistencia al Empleado, o si no ha proporcionado dicho transporte o subsistencia directamente al Empleado por otros medios, y si el Empleado completa el 50% del período del contrato de trabajo, el Empleador pagará al Empleado los gastos efectuados por el Empleado para el transporte y subsistencia diaria desde el lugar de donde el Empleado ha venido a trabajar para el Empleador, ya sea desde Estados Unidos o del extranjero. El monto del pago del transporte no será menor a los precios económicos de los pasajes públicos y razonables para las distancias involucradas.

Transporte desde el lugar de trabajo: Si el Empleado completa el período de contrato de trabajo, o si el Empleado es despedido sin causa alguna, o si el Empleado no tiene empleo inmediato con visa H2A, el Empleador proporcionará el transporte y la subsistencia diaria al Empleado al lugar desde el cual vino el Empleado. Si el Empleado es transferido a un nuevo Empleador y ha firmado un contrato en el cual no se está de acuerdo en pagar el transporte del Empleado y los gastos de subsistencia diarios desde el lugar de trabajo, el Empleador proporcionará o pagará dichos gastos. Si el Empleado ha firmado un contrato con un nuevo Empleador en el cual se está de acuerdo en pagar los gastos de transporte y subsistencia del Empleado desde el lugar de trabajo del Empleador al sitio de trabajo del nuevo Empleador, el nuevo Empleador proporcionará o pagará dichos gastos o reembolsará al Empleador por dichos gastos.

Transporte entre la vivienda y el lugar de trabajo: El Empleador proporcionará transporte entre la vivienda provista o asegurada por el Empleador al lugar de trabajo del Empleador sin costo alguno para el Empleado.

Transporte proporcionado por el empleador: El transporte proporcionado por el Empleador cumplirá con todas las leyes y regulaciones estatales, federales o locales y proporcionará, como mínimo, los mismos estándares de seguridad de transporte, licencia de conducir y seguro de vehículos según lo requerido por la ley estatal o federal.

## REGISTROS Y DECLARACIONES
El Empleador mantendrá registros precisos y adecuados con respecto a las ganancias del Empleado; además un registro del rebaño; registros de nómina de sueldo, y registros que muestren la calidad, tipo, y cantidad de trabajo realizado; el número de horas de trabajo ofrecidas diariamente por el Empleador (dividido por horas de acuerdo con y por encima de la garantía de tres cuartos); las horas efectivas trabajadas cada día por el Empleado; control del horario en que el Empleado inició y culminó su jornada; la tasa de remuneración; las ganancias del Empleado por período de pago; la dirección del hogar del Empleado y la cantidad y las razones de todas y cada una de las deducciones tomadas del salario del Empleado.

3

Sheepherder Pre-Employment Agreement

Cada Empleador mantendrá todos estos registros de manera segura y accesible en el lugar de empleo, ya sea en una o más oficinas centrales establecidas en donde dichos registros se mantienen normalmente. Todos los registros estarán disponibles si el Empleado desea revisarlos como lo demuestra la documentación apropiada.

Para ayudar a determinar si se ha cumplido la garantía de tres cuartos, éste se podrá determinar si el número de horas trabajadas por el Empleado en un día durante el período del contrato es menor que el número de horas ofrecidas, tal como se especifica en la oferta de trabajo en el cual estarán indicadas la razón o las razones para ello.

El Empleador mantendrá los registros por un período no menor de tres (3) años después de la fecha de la certificación.

## OBLIGACIONES DEL EMPLEADO

El Empleado deberá indemnizar y librar al Empleador de toda responsabilidad por pérdidas, daños o lesiones a personas o bienes resultantes de la negativa del Empleado o negligencia, o debido a la destrucción intencional de la propiedad por parte del Empleado, y devolver cualquier propiedad amoblada proporcionada al Empleado por el Empleador.

Durante la vigencia de este contrato, el Empleado deberá trabajar exclusivamente para un Empleador de la Asociación Western Range y dicho Empleador deberá ser designado por la Asociación. El Empleado deberá notificar a la Asociación, por escrito al 161 Fifth Avenue South, Ste. 100, Twin Falls, ID 83301 o mediante una llamada telefónica por cobrar al 208-595-2226 dentro de un plazo de reinta (30) días de cualquier falla por parte del Empleador en relación a su pago ya sea por la demora o por el monto de este. En el caso de que la lejanía del trabajo del Empleado haga imposible notificar a la Asociación dentro de los treinta (30) días después de que el Empleador no haga los pagos salariales, el Empleado notificará a la Asociación tan pronto como sea posible en un plazo no mayor de noventa (90) días después de que el Empleador no haya pagado los salarios adeudados al Empleado.

El Empleador y el Empleado están de acuerdo en cumplir con todas las leyes estatales y federales aplicables, incluyendo a todas las leyes de inmigración de Estados Unidos de Norte América.

## EMPLEO

Si el Empleado cumple fielmente sus deberes, el Empleador debe garantizar al Empleado la oportunidad de empleo por lo menos tres cuartos del período total del contrato y todas sus extensiones vigentes, comenzando con el primer día de trabajo después de la llegada del Empleado al lugar del empleo y terminando en la fecha de culminación especificada en el contrato, o sus extensiones, según sea el caso.

Imposibilidad del contrato: Si, antes de la fecha de vencimiento especificada en el contrato de trabajo, los servicios del Empleado ya no son requeridos por razones fuera del control del Empleador, debido a un incendio, clima u otro acto de la naturaleza que haga imposible el cumplimiento de este contrato, este contrato puede darse por finalizado.

El Empleador hará esfuerzos para transferir al Empleado a otro empleo similar aceptable para el Empleado, consistente con la ley de inmigración vigente, según corresponda. Si dicha transferencia no se puede realizar, el Empleador deberá:

• Regresar al Empleado a su lugar de origen, sin costo alguno, o transportar al Empleado al nuevo Empleador con una visa H2A, o lo que prefiera el Empleado.

• Reembolsar al Empleado el monto total o de cualquier deducción hecha del pago al Empleado ya sea por los gastos de transporte o de subsistencia en el lugar de trabajo.

• Pagar al Empleado por cualquier gasto efectuado ya sea en transporte o por subsistencia diaria durante el trabajo. El monto de pago del transporte no será menor al costo de transporte público común y debe ser razonable para las distancias involucradas.

Tres cuartos de garantía: Oferta al empleado: El Empleador garantizará ofrecer empleo por un número total de horas igual a los tres cuartos de los días laborables del período total, que comienza con el primer día laborable después de la llegada del Empleado al lugar de empleo o de la primera fecha contractual anunciada, o lo que sea más reciente, terminando en la fecha de vencimiento especificada en el contrato de trabajo o en sus extensiones según sea el caso.

Para los propósitos de este párrafo, un día laborable significa el número de horas en un día laboral como se indica en la orden de trabajo y excluye los días feriados religiosos del Empleado y los días feriados federales. El Empleador ofrecerá un número total de horas para asegurar el trabajo suficiente para alcanzar la garantía de tres cuartos.

El período de contrato de trabajo puede ser acortado por acuerdo de las partes, siempre y cuando tenga la aprobación del Director Ejecutivo. En el caso de que el Empleado comience a trabajar después de la fecha de inicio especificada del contrato, el período de garantía comienza con el primer día laborable después de la llegada del Empleado al lugar de trabajo y continúa hasta el último día indicado en el contrato de trabajo como las extensiones que estén en vigencia.

Se le podrá ofrecer al Empleado más horas de las especificadas en una sola jornada laboral. Sin embargo, a efectos de cumplir con la garantía, el Empleado no estará obligado a trabajar más horas que el número de horas especificado en la orden de trabajo salvo eventualidades. Todas las horas trabajadas deben ser contabilizadas por el Empleador para calcular si el período de empleo garantizado se ha cumplido. Si durante el período del contrato de trabajo el Empleador otorga al Empleado empleo distinto al requerido bajo este

4

Sheepherder Pre-Employment Agreement

párrafo, el Empleador pagará al Empleado la cantidad que el Empleado habría ganado si el Empleado hubiera trabajado efectivamente por el número de días garantizado.

Incumplimiento del trabajo:Las horas que el Empleado no pueda trabajar, hasta el máximo de horas especificadas en la orden de trabajo para un jornal, incluyendo el trabajo voluntario más de ocho (8) horas en un día laborable o en el feriado religioso del Empleado o fiestas federales, deberá ser contabilizado por el Empleador para calcular si el período de garantía de empleo ha sido cumplido.

Obligación de proporcionar alojamiento y comidas: A pesar de ofrecer los tres cuartos de garantía, el Empleador está obligado a proporcionar vivienda y comida por cada día del período contractual hasta el día en que el Empleado sea transferido a otro Empleador con visa H2A, o el Empleado regrese a su país de origen, o si el Empleado abandona voluntariamente el empleo o es despedido.

TERMINO DEL EMPLEO
Un Empleado puede ser despedido por causas prohibidas por la ley estatal o federal. Los delitos que se consideran causa justa para el despido del Empleado incluyen, pero no se limitan a lo siguiente:
· Falta al no reportarse al trabajo, ausencias excesivas del Empleado al trabajo o salida del lugar de trabajo sin autorización del Empleador.
· No realizar trabajos de calidad y cantidad de manera eficaz y eficiente.
· Negligencia grave o acciones premeditadas que resulten en un mal trabajo; perdida, daño o lesión a la propiedad o ganado del Empleador.
· Daño deliberado o lesión a otro Empleado o sus pertenencias.
· Robar pertenencias ya sea de la compañía, rancho, Empleador o de algún otro Empleado.
· Posesión de armas de fuego u otras armas sin autorización del Empleador.
· Estar bajo la influencia de drogas o alcohol durante las horas de trabajo.
· Cambiar una aplicación o falsificar documentos donde demuestra la experiencia de trabajo en la solicitud de empleo.

El Empleador aplicará estas normas uniformemente y de manera no discriminatoria, como lo requiere la ley.

El Empleador podrá despedir al Empleado luego de dos advertencias por escrito (no necesariamente por la misma ofensa). Las advertencias serán escritas en un lenguaje comprensible para el Empleado y el Empleado tendrá la oportunidad de firmar la advertencia. El despido inmediato puede ocurrir sin una advertencia escrita, si la ofensa del Empleado es de naturaleza severa o de emergencia, como una amenaza a la vida, seguridad y/o salud del Empleado, ganado u otros, o involucra la destrucción intencional de propiedad. Si un Empleado es involuntariamente despedido, el Empleado será provisto de una declaración por escrito explicando la causa (s) para la cancelación del contrato.

Abandono de empleo o despido por causa:Si el Empleado abandona voluntariamente su empleo antes de que finalice el período del contrato, o si es despedido por alguna causa, el Empleador deberá notificar a las autoridades estatales y federales correspondientes. El Empleado no tiene derecho a la garantía de tres cuartas partes ni a la subsistencia o gastos de transporte. Se considerará que el abandono comienza después de que el Empleado no se reporte para trabajar a la hora programada regularmente por cinco (5) días hábiles consecutivos sin el consentimiento del Empleador.

TRANSFERENCIA Y ASIGNACIÓN
El Empleado entiende y acepta que durante la vigencia de este contrato, la Asociación y el Empleador pueden transferir al Empleado a un nuevo Empleador que sea miembro de la Asociación, siempre que el nuevo Empleador esté de acuerdo en todos los términos y condiciones de este contrato. Si el Empleado se opone a una transferencia, la Asociación considerará las preocupaciones del Empleado; sin embargo la negativa por parte del Empleado a ser transferido puede someter al Empleado a ser despido como está indicado en los reglamentos del Departamento de Labor (DOL).

EMPLEADO (Pastor)

Jose Antonio Alcaea Aguero. _____ (Nombres y apellidos en letra imprenta)

Jr. Lima s/n Ondores - Junin _____ Dirección Permanente

_____ Firma Empleado

WESTERN RANGE ASSOCIATION

Monica Youree _____ Firma
Monica Youree Director Ejecutivo de Western Range Association

5